**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SOUTH HILLS CATHOLIC ACADEMY,

Plaintiff,

v.

PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES, VALERIE A. ARKOOSH, in her official capacity as Secretary of the Pennsylvania Department of Human Services, OFFICE OF CHILD DEVELOPMENT AND EARLY LEARNING, BUREAU OF CERTIFICATION, SHARON ARABIA, in her official and individual capacities as Acting Director, Office of Child Development and Early Learning, KRISTEN COURT, in her official and individual capacities as a Certification Representative for the Department of Human Services, Office of Child Development and Early Learning, Bureau of Certification, JOYCE PURCELL, in her official and individual capacities as a Certification Representative for Department of Human Services, Office of Child Development and Early Learning, Bureau of Certification, AMY CARNICELLA, in her official and individual capacities as Counsel for Department of Human Services, Office of Child Development and Early Learning, Bureau of Certification, and EUGENE CUCCARESE, in his official and individual capacities as Counsel for Department of Human Services, Office of Child Development and Early Learning, Bureau of Certification,

Defendants.

CIVIL ACTION NO. ___________

**COMPLAINT**

***Jury Trial Demanded***

***Electronically Filed***

**COMPLAINT – CIVIL ACTION**

Plaintiff, South Hills Catholic Academy (the "School"), by and through its undersigned Counsel, file the following Complaint against Defendants, Pennsylvania Department of Human Services ("DHS"), Valerie A. Arkoosh, in her official capacity as Secretary of DHS, the Office of Child Development and Early Learning ("OCDEL"), the Bureau of Certification, Sharon Arabia, in her official and individual capacity as Acting Director of OCDEL, Kristen Court, in her official and individual capacity as a Certification Representative for DHS, OCDEL, Bureau of Certification, Joyce Purcell, in her official and individual capacity as a Certification Representative for DHS, OCDEL, Bureau of Certification, Amy Carnicella, in her official and individual capacity as counsel for DHS, OCDEL, Bureau of Certification, and Eugene Cuccarese in his official and individual capacity as counsel for DHS, OCDEL, Bureau of Certification.

**Summary of Action**

This Action is brought on behalf of a private catholic elementary school that, as part of its school program, allows its students to come to school early and/or stay late for enrichment purposes. Defendants contend that they have regulatory power over the School due to the enrichment program. The issue of whether the government agency has such authority over the School is currently being litigated in court and multiple judicial stays have been issued while the issue of jurisdiction is pending. In the meantime, the Defendants, unwilling to wait for the results of the judicial process, which may include a ruling that they do not have jurisdiction to regulate the private religious School, and admittedly without any exigent circumstances, have acted without due process of law and without authority in their zeal to inspect and regulate. On April 9th 2024, without warning, Defendants appeared at the School, on private property, while school activities were occurring and young students were present, pursuant to a search warrant to "inspect" the

School. As will be more fully set forth, the DHS enabling statute and regulations do not provide for obtaining a search warrant, administrative or otherwise, and, in fact, provide for a totally different remedy under the circumstances present here. Additionally, the Defendants concealed the presence of a stay when they sought and obtained the warrant, thereby misrepresenting the situation and further violating the School's rights. While on the School's property the Defendants bullied and intimidated the School's teachers. Defendants' egregious conduct violated the School's civil rights warranting an award of damages as well as declaratory and injunctive relief. In support thereof the School avers as follows:

## I. BACKGROUND

1. This action is brought by the School against an agency of the Commonwealth of Pennsylvania and its various departments and agents both in their official and individual capacity as a result of the outrageous and illegal activities pursued against the School since 2022, and most recently, in April, 2024.

2. Specifically, on April 9, 2024, agents from DHS, OCDEL and the Bureau of Certification (collectively hereinafter referred to as the "**Department**") descended upon the School pursuant to an illegitimate search warrant while school activities were ongoing and conducted an interrogation of School employees while children looked on.

3. Rather than pursuing legal means of entering onto the School property, the Department and its agents unlawfully and with malice and intent to harm the School, used illegal tactics to gain entry to a K-8 religious school.

4. The actions of the Department and its agents constitute violations of the Due Process Clause, Section 1983, the Fourth Amendment protections against unlawful search and seizure, as well as Pennsylvania Constitutional law protections against searches and seizures.

5. Plaintiff seeks compensatory, injunctive and declaratory relief from this Honorable Court.

**PARTIES**

6. Plaintiff, the School, is an independent, non-profit Catholic school located at 550 Sleepy Hollow Road, Mt. Lebanon, Allegheny County, 15228 that provides education for students in grades K-8.

7. Defendant, Pennsylvania Department of Human Services (“**DHS”**) is an administrative department of the Commonwealth of Pennsylvania, with its principal offices located at Health and Welfare Building, 625 Forster Street, Harrisburg, PA 17120.

8. Defendant, Dr. Valerie A. Arkoosh (“**Arkoosh**”), is the Secretary of DHS. Defendant Arkoosh is responsible for ensuring that DHS’s programs, services, and activities comply with federal laws. Defendant Arkoosh is sued in her official capacity for actions and omissions under color of state law. Defendant Arkoosh took office on June 29, 2023, with her principal office located at Health and Welfare Building, 625 Forster Street, Harrisburg, PA 17120.

9. Defendant, Office of Development and Early Learning (“**OCDEL**”) is a “Program Office” within DHS and is overseen by DHS. OCDEL oversees the licensing, certifications and inspections of child day care centers and family child day care homes. The principal office of OCDEL is Health and Welfare Building, 625 Forster Street, Harrisburg, PA 17120.

10. Defendant Sharon Arabia (“**Arabia**”), is the Acting Director of the OCDEL, an office or department of DHS. She is sued in her official and individual capacity. Her principal offices are located at 11 Stanwix Street, Suite 240, Pittsburgh, PA 15222.

11. Defendant, **Bureau of Certification**, is a department within OCDEL whose stated responsibility (from the DHS website) is the “regulation of all childcare centers, group day care

homes and family day care homes in Pennsylvania."[1]

12. Defendant Kristen Court ("**Court**"), is employed by DHS as a Certification Representative. She is sued in her official and individual capacity. Upon information and belief her principal work address is 11 Stanwix Street, Suite 240, Pittsburgh, PA 15222.

13. Defendant Joyce Purcell ("**Purcell**") is employed by DHS as a Certification Representative. She is sued in her official and individual capacity. Upon information and belief her principal work address is 11 Stanwix Street, Suite 240, Pittsburgh, PA 15222.

14. Defendant Amy Carnicella ("**Carnicella**") is employed by the Commonwealth of Pennsylvania, Governor's Office of General Counsel as legal counsel for DHS. She is sued in her official and individual capacity. Her principal office located at 301 Fifth Avenue, Piatt Place, Suite 430, Pittsburgh, PA 15222.

15. Defendant Eugene Cuccarese ("**Cuccarese**") is employed by the Commonwealth of Pennsylvania, Governor's Office of General Counsel, as Deputy Chief Counsel and as legal counsel for DHS. He is sued in his official and legal capacity. His principal office located at 301 Fifth Avenue, Piatt Place, Suite 340, Pittsburgh, PA 15222.

16. At all times relevant and material hereto, and with respect to all actions described herein, Defendants were acting under color of law and color of their authority as officials of the Department.

## II. JURISDICTION AND VENUE

17. This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1331 and 1343 which confer original jurisdiction on federal district courts to hear suits alleging the violations of

---

[1] https://www.dhs.pa.gov/contact/DHS-Offices/Pages/OCDEL-Bureau%20of%20Certification%20Services.aspx

rights and privileges under the United States Constitution. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

18. Plaintiff's claims are authorized under 42 U.S.C. § 1983.

19. Venue is proper under 28 U.S.C. §1391(b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## III. LEGAL AND FACTUAL BACKGROUND

20. The School operates a "Guardian Angels" program, as part of its school program, which allows parents and guardians of enrolled K-8th grade students to drop their children, students enrolled at the School, off in the morning and/or pick them up in the afternoon after the end of regularly scheduled classes.

21. On April 9, 2024, individuals from the Department arrived at the School with a search warrant and conducted a search purportedly under the auspices of 62 P.S. § 911(b) of the Pennsylvania Human Services Code. (the "**Search Warrant**"). A true and correct copy of the Search Warrant is attached as **Exhibit 1.**

22. Specifically, §911 of the Human Services Code provides, in part:

> **(b)** For these purposes and for the purpose of determining whether or not a facility should be subject to the supervision of the department in accordance with section 902, the secretary, or other officer, inspector or agent of the department, shall have free and full access to the grounds, premises, and buildings of and to all the records, books or papers of or relating to any such State or supervised institution, and full opportunity to interrogate or interview any inmate thereof, or any person or persons committed to or being detained, treated or residing therein, and all persons connected with any such State or supervised institution as officers, or charged with the management, thereof, by law or otherwise, or in any way having the care, custody, control, or management thereof, or connected therewith as employes, are hereby directed and required to give to the secretary, or to such officer, inspector or agent of the department, such means, facilities and opportunity for such visitation, examination, inquiry and interrogation, as is hereby provided and required, or as the department, by its duly ordained rules or regulations, may require.

62 P.S. § 911

23. The Search Warrant was improperly issued under false pretenses; without legitimate legal process; without notice; and without legal basis. The actions of the Defendants in executing on the Search Warrant caused substantial damage to the School, its staff and students.

24. The Department's April 9, 2024 assault is the culmination of a religiously and politically motivated attack on the School which began more than two years ago.

***DHS INITIALLY TARGETS THE SCHOOL***

25. On February 23, 2022, individuals from the Department arrived unannounced and based on no articulated complaint at the School and conducted a warrantless search under the auspices of §911 of the Human Services Code, in order to determine if the School qualified as a "facility" subject to the supervision of DHS.

26. Shortly thereafter, on March 17, 2022, the School received a letter from the Department informing the School to "cease and desist" from operating what the Department termed was an "uncertified childcare facility." A true and correct copy of the March 17, 2022 correspondence from the Department is attached as **Exhibit 2**.

27. The March 17, 2022 letter, also informed the School it was required to obtain a "certificate of compliance" from the Department. *Id.*[2]

28. The School timely appealed the action by the Department.

29. Among the chief issues in the School's appeal is its assertion that the Department does not have jurisdiction to regulate the School because the Guardian Angels program is part of the program of a religious school and not a childcare facility.

[2] It is important to note that the Department did not identify any complaint regarding the School that triggered the Department's warrantless inspection to the School in the first instance. **Exhibit 2**.

30. As part of the appeal process, the School filed a motion to dismiss, which was denied by an administrative law judge and then appealed to the Commonwealth Court of Pennsylvania.[3]

***MULTIPLE COURT-ORDERED STAYS ARE ISSUED***

31. Critically, while the Pennsylvania Commonwealth Court considered the appeal, it issued an Order dated July 28, 2023 that stated, *inter alia*, "[a]ll proceedings in the underlying action are stayed pending disposition of the Petition for Review."

32. Thereafter, on September 7, 2023, the administrative law judge also issued an Order at the administrative Bureau of Hearings and Appeals ("BHA") entering a stay on the appeal.

33. Notwithstanding these two (2) judicially ordered stays, on September 12, 2023, Court and Purcell, directed and/or authorized by Arabia, Cuccarese and Carnicella, arrived at the School and conducted a warrantless search/inspection of the premises.

34. On September 13, 2023, undersigned counsel sent correspondence to Carnicella regarding the incident. A true and correct copy of the September 13, 2023 correspondence is attached as **Exhibit 3**.

35. In response to undersigned counsel's correspondence, Carnicella filed a motion with the Commonwealth Court entitled "Emergency Motion for Clarification." A true and correct copy of the Department's Motion is attached as **Exhibit 4**.

36. Within the emergency motion, Carnicella asserted that even though there were two separate stays entered by two different judicial authorities, OCDEL's "interpretation of Article IX of the Human Services Code . . .62 P.S. § 911(a)(1)" allows it to access and inspect the School

---

[3] *See*, *South Hills Catholic Academy v. Department of Human Services*, Commonwealth Court docket no 563 CD 2023.

property at its pleasure, any stay notwithstanding. ¶¶ 6-11 of Carnicella Motion, **Exhibit 4**.

37. Not surprisingly, the Commonwealth Court disagreed with Carnicella' s assertion and issued an Order stating:

> A proceeding is '[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment.' Black's Law Dictionary 1457 (11th ed. 2019). Furthermore, the Court's use of the phrase, "in the underlying action," was referring to the underlying litigation. The parties agree that in response to the Court's Order, the parties informed the Department's Bureau of Hearings and Appeals (the Bureau) that Private School's appeal of the Department's Cease and Desist Order should be stayed. In turn the Bureau granted the stay. . . Even though the Court narrowly stayed only the "proceedings," **this Court also intended to stay the Department from attempting to conduct routine monitoring inspections as the very issue in this case is whether the Department has the authority to do so in the first place**. To be clear, until further order of this Court, the Department is precluded from accessing the facility to conduct inspections . A true and correct copy of the Court's December 20, 2023 Order is attached as **Exhibit 5**.

38. On January 11, 2024, the Commonwealth Court issued an Opinion and Order, finding "[a]t this stage of the proceedings, we are not being asked to determine whether the Program provides child care and is, therefore subject to the Department's regulations. **Instead the Department will bear the burden of proof before BHA to establish Private School's operation of the Program constitutes child care in violation of the Code**." (emphasis supplied). **Exhibit 6** is a true and correct copy of the Pennsylvania Commonwealth Court's Opinion and Order dated January 11, 2024.

39. On February 13, 2024, the School filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court which is docketed at 51 WAL 2024.

40. On February 23, 2024, BHA sent out a Pre-Hearing Conference Schedule Order regarding the appeal, setting a pre-hearing conference for March 12, 2024. **Exhibit 7** is a true and correct copy of the February 23, 2024 BHA Pre-Hearing Conference Scheduling Order.

41. On February 27, 2024, Court and Purcell conducted a warrantless "inspection" at

the School, without the School's consent, counting the number of students outside playing on the turf field, interrogating the School security guard, and entering the building to view one teacher and a few children coloring.

42. At that time Court told the head of the School, "you will see us on a monthly basis for the foreseeable future."

43. On March 4, 2024, *Carnicella emailed BHA,* indicating that the School had filed a Petition for Allowance of Appeal, and asking "whether the appeal before BHA will be stayed pending the outcome by the PA Supreme Court. ***I am in favor of staying the appeal before BHA.*** . ." (emphasis added). **Exhibit 8** is a true and correct copy of the March 4, 2024 email from Carnicella.

44. The next day, March 5, 2024, ALJ Jacob Herzing issued an Order that the appeal "be stayed for a period of one hundred eighty (180) calendar days to permit the resolution of Petition." **Exhibit 9** is a true and correct copy of the March 5, 2024 BHA Order entering a Stay.

45. On March 20, 2024, Court and Purcell arrived at the School and attempted to conduct another warrantless "inspection." Harmony Stewart, the head of the School informed them that a stay had been entered similar to the previous stay, and that they were not permitted to enter the School.

***COURT AND PURCELL ILLEGALLY OBTAIN A SEARCH WARRANT***

46. On April 8, 2024 at approximately noon, Court and Purcell, carrying information assembled by Cuccarese and Carnicella, appeared at Magisterial District Judge Hilary Wheatly's office located at 680 Washington Road, B103, Pittsburgh, 15228 in order to obtain the Search Warrant. **Exhibit 1**.

47. The Search Warrant has all of the appearances of a criminal search warrant;

however, Defendants have since referred to it as an "administrative search warrant."

48. Even assuming *arguendo*, that the Search Warrant is indeed an "administrative" search warrant, neither the Human Services Code, nor the child care regulations cited by Defendants in the Search Warrant provide Defendants with the authority to obtain and use an administrative search warrant in these circumstances. *See*, 62 P.S. §§ 1052-1056.

49. Defendants have not identified any authority explicitly granting the Department the power to obtain and serve an administrative search warrant pursuant to the Human Services Code enabling legislation.[4]

50. Furthermore, Defendants did not have any probable cause to obtain the Search Warrant.

51. On April 9, 2024, at approximately 3:37 p.m., Court and Purcell, along with Constable Kulik, dressed in full law enforcement garb, arrived at the School armed with the Search Warrant and proceeded to search and disrupt the School.

52. As noted on the Search Warrant, the Department, Court and Purcell sought the Search Warrant "to determine whether conditions at this (current) unlicensed facility pose a threat to the health and safety of children. . ." and "to search for files and records at this (current) unlicensed facility that pertain to how many children are in care and information regarding their care." **Exhibit 1**.

53. Court signed the Search Warrant under the section wherein it states:

> The below named Affiant, being duly sworn (or affirmed) before the issuing Authority according to the law, deposes and says that ***there is probable cause*** to believe that the items or property identified ***are evidence or the fruit of a crime***, or are contraband, or are

[4] For example, regulations promulgated pursuant to the "Older Adult Daily Living Centers Act," 62 P.S. §§ 1511.1 – 1511.22 provide specific authority for obtaining an administrative search warrant. *See*, 6 Pa.Code § 11.245. No parallel provision is found in the Human Services Code regulations. *See*, 55 Pa. Code §§ 3270-3290.

> expected to be otherwise unlawfully possessed or subject to seizure, and that these items or property are or are expected to be located on the particular person or at the particular place described above. I certify that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

**Exhibit 1**. (emphasis added).

54. Attached to the Search Warrant, according to the front page, was a "Probable Cause Affidavit." **Exhibit 1.**

55. The Probable Cause Affidavit contained a selective procedural history of the litigation between the Department and the School; however, notably absent from the recitation was any mention of the stay entered by Commonwealth Court in July 2023; the similar stay entered by BHA; the activities of the Department, Court and Purcell in purposely and blatantly disregarding the Court's and BHA's stay; and the more recent **<u>stay requested by Carnicella</u>** and entered by BHA. **Exhibit 1**; ¶¶ 31-37;43-44 *infra*.

56. The Probable Cause Affidavit also failed to disclose that the School had, on March 20, 2024, explicitly cited the BHA stay as the reason to deny DHS entry to the School. **Exhibit 1**.

57. The Probable Cause Affidavit, citing to DHS regulations, noted that "a facility or agency shall provide to authorized agents of the Department ***full access to the facility*** or agency and its records ***during both announced and unannounced inspections***. 55 Pa.Code §20.34. The facility or agency shall provide the opportunity for authorized agents of the Department to ***privately interview staff and clients***. *Id*. A staff person ***shall provide to agents of the Department immediate access to the facility and, upon request, to the children*** and the files and records. 55 Pa. Code § 3270.24." **Exhibit 1**. (emphasis supplied).

58. The Probable Cause Affidavit was sworn to and the Search Warrant requested and issued with the Individual Defendants knowing or acting in reckless disregard of the falsity of its

content in order to, at all costs, carry out the search.

59. Despite knowing full well that the School and its counsel took the position that the stay precluded them from entering the School, at least without further judicial or administrative order, the Defendants pursued the Search Warrant and failed to provide any advance notice to the School or its counsel.

60. Individual Defendants Court and Purcell, at the direction and with the approval of Individual Defendants Carnicella, Cuccarese and Arabia, used the aforesaid Search Warrant not for any lawful purpose, but rather for the purposes of obtaining additional evidence for use in the appeal filed by the School and to harass and intimidate the School and its constituents, particularly Roman Catholic students and families.

61. Individual Defendants knew that the Search Warrant in question was illegal, overbroad, and would cause irreparable harm to Plaintiff and its constituents.

62. The Search Warrant in question was procedurally and substantively improper and violated clearly established constitutional rights of the Plaintiff.

63. As stated above, in the "Legal Authority" information provided in the Probable Cause affidavit, the Department and individual Defendants cited 62 P.S. §911 which, on its face, seems to grant the right to enter *licensed facilities* for inspections.[5]

64. However, first and foremost, the School is not a licensed facility and the issue of whether it is required to be licensed is currently being contested in court.

65. Moreover, the School is a private religious school not open to the public at large

[5] This Complaint also challenges the constitutionality of the provisions of the statute and regulations that seemingly permit warrantless searches without precompliance review which were found to be improper by the U.S. Supreme Court in *City of Los Angeles v. Patel,* 576 U.S. 409 (2015).

but rather available only to those families who have made a decision to enroll their children.

66. Parents and students unquestionably have a reasonable expectation of privacy in the premises of the school chosen for attendance vis a vis government officials; the Supreme Court has stated, "[w]hen parents place minor children in private schools for their education, the teachers and administrators of those schools stand *in loco parentis* over the children entrusted to them. *Veronia Sch. Dist. v. Acton*, 515 U.S. 646, 654-55 (1995).

67. Therefore, there is no basis for concluding that when a minor child is entrusted to the care of a private school *in loco parentis*, his or her reasonable expectation of privacy vis-à-vis government officials differs in any material respect from that which he or she would expect to receive at home.

68. In both cases, the child is in an enclosed structure, that is not open to the general public, and is cared for and looked after by individuals with parental authority; it is entirely reasonable for parents who place their children in private schools, along with teachers and administrators of those schools, to expect that the parents' express delegation of parental authority to school officials will be both acknowledged and respected by government actors.

69. Critically, because the matter has been appealed and is pending in court, a further provision of the Human Services Code, §1055, dictates the Department's available remedy in this situation is seeking a restraining order or injunction, not a search warrant. *See*, 62 P.S. §1055.

70. Specifically, §1055 of the Human Services Code provides:

> Whenever the department shall have refused to grant or renew a license, or shall have revoked a license required by law to operate or conduct a private institution, or *shall have ordered the person to refrain from conduct* violating the rules and regulations of the department **and the person deeming himself aggrieved by such refusal or revocation or order shall have appealed the action of the department, the court may, during pendency of such appeal,** ***issue a restraining order or injunction*** upon proof that the operation of the private institution or its failure to comply with the order of the department adversely

> affects the well-being and safety of the patients or inmates in the private institution.
>
> 62 P.S. § 1055 (emphasis added).

71. Contrary to the provisions contained in §1055 of the Human Services Code, the individual Defendants did not seek an injunction; rather they illegally obtained a Search Warrant using incomplete and incorrect information. **Exhibit 1**.

72. Article X of the Pennsylvania Human Services Code provides the Department with the statutory authority to license and regulate child care facilities within the Commonwealth of Pennsylvania. 62 P.S. §§ 1001 – 1088.

73. In addition, Article X speaks to the authority of courts of common pleas to issue injunctions to prevent the operation of a facility when the facility is operating without a license or for a facility's violation of the Department's regulations. *See*, 62 P.S. §§ 1052-1056.

74. The Department is required to seek this injunctive relief from the courts when a "facility" is pursuing an administrative appeal. *Id*.

75. Article X does not bestow on the Department the ability to obtain a search warrant (criminal or administrative) to enter and inspect a facility, and certainly does not provide an ability to do so without probable cause. *See, e.g., In the Interest of Y.W.-B.*, 265 A.3d. 602 (Pa. 2021)(Court determined controlling standards for determining whether probable cause exists for issuance of an administrative warrant in cases involving possible harm to children are the same as those developed in criminal cases and that no perceived increase in the societal interest involved alters these standards); *see also, Good v. Dauphin County Social Services for Children and Youth*, 891 F.2d 1087 (3d Cir. 1989).

76. Furthermore, the provisions contained in the Human Services Code and regulations cited by Defendants to allegedly permit them on February 23, 2022, February 27, 2024, and other

instances when the Department attempted or did conduct so-called "inspections" of the School without a warrant are unconstitutional as determined by the Supreme Court in *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015)(Los Angeles ordinance held facially invalid because it did not afford hotel operators any opportunity for precompliance review)[6].

***DURING AND POST-SEARCH FACTS***

77. While illegally on the School premises, Court and Purcell interrogated teachers who were working at the School and caring for students.

78. Even though teachers informed Court and Purcell they did not want to answer questions, and directed Court and Purcell to speak with Harmony Stewart, the Head of the School, Court and Purcell harassed and intimidated the School's teachers, telling them the Search Warrant entitled them to ask any questions they wanted; the School's teachers got visibly upset as teachers were attempting to care for the students in their charge and continue with their duties.

79. Parents who were at the School to pick up their children inquired to the teachers and Stewart about what was going on and was "everything okay?" upon seeing Court and Purcell along with Constable Kulik, who was dressed in a uniform similar to a police uniform.

80. Court and Purcell also demanded personnel files from Stewart.

81. Court and Purcell along with Constable Kulik were at the School conducting their search for approximately one hour, until approximately 4:30 p.m.

82. Court and Purcell interrogated Stewart about multiple programs occurring at the School, including demanding the names of parents participating in a "Little Runners" program

[6] In *Patel,* the Court considered whether the ordinance in questions fell within the "administrative search exception" to the warrant requirement. Citing to prior Supreme Court precedent, the Court held that "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker. *Patel*, 576 U.S. at 420 (citations omitted).

taking place outside of the School.

83. Students were visibly scared as a result of the actions of the defendants.

84. On April 10, 2024, undersigned counsel contacted Cuccarese and inquired as to the use of the illegal Search Warrant. Cuccarese responded, leaving a message on undersigned counsel's voicemail stating:

> ***I was fully aware of the process*** to obtain and execute an administrative search warrant at South Hills Catholic Academy based on your clients refusal to allow access <u>despite the fact that the Stay is no longer in place</u> . . . therefore the Department had every legal right to enter and inspect for health and safety of the children pending the resolution of litigation over the licensing issue. Upon refusal by your client to allow access at least the second time the Departments representatives showed up. We pursued our legal right to obtain an administrative search warrant. There is well settled law that was followed. The law governing administrative search warrants was outlined to the District Justice, Judge rather, and the District Judge agreed that sufficient cause existed to issue the warrant. That warrant was issued, and it was executed yesterday as I am sure your client advised you. . . Again, there is settled case law governing how to obtain and administrative search warrant and the fact that they are agency, commonwealth agency are permitted to pursue them and execute them based on judicial review of the need for said search warrant.

A true and correct copy of a dictation of a voicemail left by Cuccarese on April 10, 2024 to undersigned counsel is attached as **Exhibit 10**.

## IV. CAUSES OF ACTION

### <u>COUNT I</u>

### <u>42 U.S.C. § 1983 – Fourteenth Amendment to the United States Constitution</u>

### <u>Procedural Due Process</u>

### (Plaintiff v. All Defendants)

85. Plaintiff incorporates by reference the forgoing allegations as though fully stated herein.

86. This claim is brought in accordance with 42 U.S.C. §1983.

87. Pursuant to the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law. . ." U.S. Const. amend. XIV, § 1.

88. The obtaining and execution of the Search Warrant by Defendants against the School was in violation of the Plaintiff's procedural due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

89. The core of due process "is the right to notice and a meaningful opportunity to be heard." *Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007)(*quoting LaChance v. Erickson,* 522 U.S. 262, 266 (1998).

90. By virtue of the illegal, improper, and damaging manner in which Defendants obtained and executed the Search Warrant at the School, as set forth above, Plaintiff was denied any opportunity to be heard and, as a result, has suffered harm to its property and liberty interests.

91. The aforesaid actions of Defendants have blackened Plaintiff's name and reputation, thus depriving them of liberty without due process of law.

92. As a consequence and result of the aforesaid acts of the Defendants, Plaintiff has suffered impairment of its reputation and embarrassment, incurred damages caused by the interference of its business, and were required and continue to be required, to spend substantial sums of money and time in defending itself from the actions taken against them by the Defendants.

WHEREFORE, Plaintiff respectfully requests the following relief:

a) a declaratory judgment that the policies, practices and acts complained of herein are illegal and unconstitutional;

b) a permanent injunction enjoining the Defendants, their agents and employees from:

    1) searching and inspecting the School during the pendency of any litigation;

2) enforcing Department laws, regulations, policies and procedures in a discriminatory non-uniform way;

3) utilizing Department laws, regulations, policies and procedures to harass and/or retaliate against Plaintiff;

4) utilizing licensing representatives from the Department to harass and/or retaliate against Plaintiff in the operation of its School;

5) subjecting Plaintiff to harassment and/or retaliation, or conspiring with others to do so, in their capacity as Department officials;

c) compensatory and punitive damages;

d) reasonable attorneys' fees and costs of suit; and

e) such other and further relief as this Court may deem just and proper.

**COUNT II**

**42 U.S.C. §1983 – Fourteenth Amendment**
**To the United States Constitution**

**Substantive Due Process**

**(Plaintiff v. All Defendants)**

93. Plaintiff incorporates by reference the forgoing allegations as though fully stated herein.

94. The aforementioned actions of the Defendants, which were arbitrary, irrational, outrageous, contrary to the enabling statute of the Department, in bad faith, and designed to prevent Plaintiff from enjoying its rights as property owners and from conducting its school operation, constitute conduct which shocks the conscience and violates the Plaintiff's substantive due process rights as guaranteed by the Fourteenth Amendment of the Constitution of the United States.

95. The Defendants abused their power and conspired to use a campaign of "shock and

awe" on the service of the Search Warrant on the School during a time when young children were participating in school activities, teachers were present and monitoring the students and parents were at the School to pick up their students.

96. No circumstances existed at the time of the execution of the Search Warrant to justify the forced entry on Plaintiff's property.

97. The manner in which the Defendants caused the execution of the Search Warrant of Plaintiff's property was illegal, improper and performed solely to injure Plaintiff.

98. Defendants were already aware that the School was not licensed as a day care facility, as Defendants sent the School a "cease and desist" notice over two years ago and an appeal is pending.

99. Defendants are well aware of the authority provided to them regarding unlicensed operations, and it does not permit inspections to determine if the School is following the Department's regulations – an inspection on this basis is absurd.

100. Rather, Defendants' actions were inspired by malice and amounted to an abuse of power and were retaliatory for the School exercising its appeal rights and refusing to submit to the regulatory demands of the Department.

101. There was no probable cause for the issuance of the Search Warrant and there was no legal basis for using the Search Warrant to enter the Plaintiff's property.

102. As a consequence and result of the aforesaid acts of Defendants, Plaintiff has suffered impairment of its reputation and embarrassment, incurred damages caused by the interference of its business, and were required and continue to be required, to spend substantial sums of money and time in defending itself from the actions taken against them by the Defendants.

WHEREFORE, Plaintiff respectfully requests the following relief:

a) a declaratory judgment that the policies, practices and acts complained of herein are illegal and unconstitutional;

b) a permanent injunction enjoining the Defendants, their agents and employees from:

1) searching and inspecting the School during the pendency of any litigation;

2) enforcing Department laws, regulations, policies and procedures in a discriminatory non-uniform way;

3) utilizing Department laws, regulations, policies and procedures to harass and/or retaliate against Plaintiff;

4) utilizing licensing representatives from the Department to harass and/or retaliate against Plaintiff in the operation of its School;

5) subjecting Plaintiff to harassment and/or retaliation, or conspiring with others to do so, in their capacity as Department officials;

c) compensatory and punitive damages;

d) reasonable attorneys' fees and costs of suit; and

e) such other and further relief as this Court may deem just and proper.

**COUNT III**

**42 U.S.C. §§1983 – Fourth and Fourteenth Amendment To the United States Constitution**

**Unreasonable Search and Seizure**

**(Plaintiff v. All Defendants)**

103. Plaintiff incorporates by reference the forgoing allegations as though fully stated herein.

104. The Defendants' entry onto the Schools' property without consent, without a warrant, and with an illegally obtained warrant were violations of the Plaintiff's constitutional

rights under the Fourth and Fourteenth Amendments of the Constitution of the United States.

105. Pursuant to the Human Services Code and its regulations, Defendants conducted warrantless inspections of the School without the School's consent and without an opportunity for pre-compliance review, which is a violations of the Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments of the Constitutional of the United States.

106. The Defendants' entry onto the Schools' property with an illegally obtained Search Warrant was a violation of the Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments of the Constitution of the United States.

107. The Defendants have intentionally, willfully, recklessly and unlawfully interpreted the Human Services Code and its regulations in a manner to deprive Plaintiff of its constitutional rights, including, *inter alia*, its right to privacy.

108. The aforementioned actions of the Defendants, which are arbitrary, irrational, outrageous, in bad faith, and designed to deprive Plaintiff of the beneficial use of its property, constitutes conduct which shocks the conscience and violates Plaintiff's due process rights as guaranteed by the Fourteenth Amendment of the Constitution of the United States.

109. As a consequence and result of the aforesaid acts of Defendants, Plaintiff has suffered impairment of its reputation and embarrassment, incurred damages caused by the interference of its business, and were required and continue to be required, to spend substantial sums of money and time in defending itself from the actions taken against them by the Defendants.

WHEREFORE, Plaintiff respectfully requests the following relief:

a) a declaratory judgment that the policies, practices and acts complained of herein are illegal and unconstitutional;

b) a permanent injunction enjoining the Defendants, their agents and employees from:

1) searching and inspecting the School during the pendency of any litigation;
2) enforcing Department laws, regulations, policies and procedures in a discriminatory non-uniform way;
3) utilizing Department laws, regulations, policies and procedures to harass and/or retaliate against Plaintiff;
4) utilizing licensing representatives from the Department to harass and/or retaliate against Plaintiff in the operation of its School;
5) subjecting Plaintiff to harassment and/or retaliation, or conspiring with others to do so, in their capacity as Department officials;

c) compensatory and punitive damages;

d) reasonable attorneys' fees and costs of suit; and

e) such other and further relief as this Court may deem just and proper.

**COUNT IV**

**42 U.S.C. §§1983 – First and Fourteenth Amendment To the United States Constitution**

**Free Exercise Clause of the First Amendment**

**(Plaintiff v. All Defendants)**

110. Plaintiff incorporates by reference the forgoing allegations as though fully stated herein.

111. When the government conducts an illegal search of a religious or parochial school, these actions implicate the constitutional rights of the school, child and parents under the Free Exercise Clause of the First Amendment.

112. Furthermore, when a government search or seizure implicates First Amendment rights, the requirements of the Fourth Amendment mut be applied with "scrupulous exactitude."

*Maryland v. Macon*, 472 U.S. 463, 468 (1985).

113. The School, its teachers, students and administrators had a reasonable expectation of privacy in and within the School's premises.

114. The Department's searches of the School were not done pursuant to a court order, probable cause or exigent circumstances.

115. As a consequence and result of the aforesaid acts of Defendants, Plaintiff has suffered impairment of its reputation and embarrassment, incurred damages caused by the interference of its business, and were required and continue to be required, to spend substantial sums of money and time in defending itself from the actions taken against them by the Defendants.

WHEREFORE, Plaintiff respectfully requests the following relief:

a) a declaratory judgment that the policies, practices and acts complained of herein are illegal and unconstitutional;

b) a permanent injunction enjoining the Defendants, their agents and employees from:

    1) searching and inspecting the School during the pendency of any litigation;

    2) enforcing Department laws, regulations, policies and procedures in a discriminatory non-uniform way;

    3) utilizing Department laws, regulations, policies and procedures to harass and/or retaliate against Plaintiff;

    4) utilizing licensing representatives from the Department to harass and/or retaliate against Plaintiff in the operation of its School;

    5) subjecting Plaintiff to harassment and/or retaliation, or conspiring with others to do so, in their capacity as Department officials;

c) compensatory and punitive damages;

d) reasonable attorneys' fees and costs of suit; and

e) such other and further relief as this Court may deem just and proper.

**COUNT V**

**Pa. Const. Art. I, §8**

**Unreasonable Search and Seizure**

**(Plaintiff v. All Defendants)**

116. Plaintiff incorporates by reference the forgoing allegations as though fully stated herein.

117. Pa. Const. art. I, § 8 protects all citizens in the Commonwealth of Pennsylvania against unreasonable searches by requiring a high level of particularity, i.e., that warrants describe as nearly as may be the place to be searched and the items to be seized with specificity.

118. Pa. Const. art. I, § 8 also requires that a warrant be supported by probable cause to believe that the items sought will provide evidence of a crime.

119. The Defendants' entry onto the Schools' property with an illegally obtained Search Warrant was a violation of the Plaintiff's constitutional rights under Pa. Const. art. I, § 8 of the Pennsylvania Constitution.

120. The Defendants have intentionally, willfully, recklessly and unlawfully interpreted the Human Services Code in a manner to deprive Plaintiff of its constitutional rights.

121. The aforementioned actions of the Defendants, which are arbitrary, irrational, outrageous, in bad faith, and designed to deprive Plaintiff of the beneficial use of its property, constitutes conduct which shocks the conscience and violates Plaintiff's rights against unreasonable search and seizure as guaranteed by Pa. Const. art. I, § 8 of the Pennsylvania Constitution.

122. As a consequence and result of the aforesaid acts of Defendants, Plaintiff has suffered impairment of its reputation and embarrassment, incurred damages caused by the interference of its business, and were required and continue to be required, to spend substantial sums of money and time in defending itself from the actions taken against them by the Defendants.

WHEREFORE, Plaintiff respectfully requests the following relief:

a) a declaratory judgment that the policies, practices and acts complained of herein are illegal and unconstitutional;

b) a permanent injunction enjoining the Defendants, their agents and employees from:

   1) searching and inspecting the School during the pendency of any litigation;

   2) enforcing Department laws, regulations, policies and procedures in a discriminatory non-uniform way;

   3) utilizing Department laws, regulations, policies and procedures to harass and/or retaliate against Plaintiff;

   4) utilizing licensing representatives from the Department to harass and/or retaliate against Plaintiff in the operation of its School;

   5) subjecting Plaintiff to harassment and/or retaliation, or conspiring with others to do so, in their capacity as Department officials;

c) compensatory and punitive damages;

d) reasonable attorneys' fees and costs of suit; and such other and further relief as this Court may deem just and proper.

**COUNT VI**

**Pennsylvania Constitution, Article I, §§ 1, 11, 26**

**Violation of Plaintiff's Right to Procedural Due Process and Reputation**

**(Plaintiff v. All Defendants)**

123. Plaintiff incorporates by reference the forgoing allegations as though fully stated herein.

124. The Due Process Clause of the Pennsylvania Constitution provides, "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. Art. I, § 26.

125. In addition, the Pennsylvania Constitution treats reputation differently than the federal constitution.

126. In *R. v. Commonwealth of Pennsylvania Dept. of Public Welfare*, 636 A.2.d, 142, 146, (1994), the Pennsylvania Supreme Court held that:

> [I]n Pennsylvania, reputation is an interest that is recognized and protected by our highest state law; our Constitution. Section 1 and 11 of Article 1 makes explicit reference to "reputation," providing the basis for this Court to regard it as a fundamental interest which cannot be abridged without compliance with constitutional standards of due process and equal protection.

127. Plaintiff is entitled to due process, including notice and an opportunity to be heard, before being deprived of its right to reputation.

128. The warrantless searches conducted by Defendants and the obtaining and execution of the Search Warrant by Defendants against the School was in violation of the Plaintiff's procedural due process rights as guaranteed by Pennsylvania Constitution.

129. By virtue of the illegal, improper, and damaging manner in which Defendants conducted warrantless searches and obtained and executed the Search Warrant at the School, as set forth above, Plaintiff has suffered harm to its property, liberty and reputational interests.

130. The aforesaid actions of Defendants have blackened Plaintiff's name and

reputation, thus depriving them of reputation without due process of law.

131. As a consequence and result of the aforesaid acts of the Defendants, Plaintiff has suffered impairment of its reputation and embarrassment, incurred damages caused by the interference of its business, and were required and continue to be required, to spend substantial sums of money and time in defending itself from the actions taken against them by the Defendants.

WHEREFORE, Plaintiff respectfully requests the following relief:

a) a declaratory judgment that the policies, practices and acts complained of herein are illegal and unconstitutional;

b) a permanent injunction enjoining the Defendants, their agents and employees from:

1) searching and inspecting the School during the pendency of any litigation;

2) enforcing Department laws, regulations, policies and procedures in a discriminatory non-uniform way;

3) utilizing Department laws, regulations, policies and procedures to harass and/or retaliate against Plaintiff;

4) utilizing licensing representatives from the Department to harass and/or retaliate against Plaintiff in the operation of its School;

5) subjecting Plaintiff to harassment and/or retaliation, or conspiring with others to do so, in their capacity as Department officials;

c) compensatory and punitive damages;

d) reasonable attorneys' fees and costs of suit; and

e) such other and further relief as this Court may deem just and proper.

Dated: May 7, 2024

Respectfully submitted,

STRASSBURGER McKENNA
GUTNICK & GEFSKY

By: /s/Kathryn L. Clark
Kathryn L. Clark
Pa. I.D. No.: 80201
kclark@smgglaw.com
Alan T. Shuckrow
Pa. I.D. No.: 74586
ashuckrow@smgglaw.com
Gretchen E. Moore
Pa. I.D. No. 202103
gmoore@smgglaw.com

Four Gateway Center, Suite 2200
444 Liberty Avenue
Pittsburgh, PA 15222

(412) 281-5423 (phone)
(412) 281-8264 (fax)

*Counsel for Plaintiff*

**JURY TRIAL DEMANDED**