

# Commonwealth of Pennsylvania

## COUNTY OF Allegheny

### APPLICATION FOR
# SEARCH WARRANT
### AND AUTHORIZATION

| Docket Number (Issuing Authority): | Police Incident Number: | Warrant Control Number: |
|---|---|---|

| Kristen Court | DHS, OCDEL, Bureau of Certification | (412) 565-5239 | |
|---|---|---|---|
| *AFFIANT NAME* | *AGENCY* | *PHONE NUMBER* | *DATE OF APPLICATION* |

**IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED** *(Be as specific as possible):*

The Department requests to search the inside and outside premises of South Hills Catholic Academy's before and after school child care program to determine whether conditions at this (current) unlicensed facility pose a threat to the health and safety of children. Addtitionally, the Department requests to search for files and records at this (current) unlicensed facilty that pertain to how many children are in care and information regarding their care.

**SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED** *(Street and No., Apt. No., Vehicle, Safe Deposit Box, etc.):*

The inside and outside premises of South Hills Catholic Academy's before and after school child care program located at 550 Sleepy Hollow Road, Pittsburgh, Pennsylvania 15228-2661.

**NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED** *(If proper name is unknown, give alias or description):*

South Hills Catholic Academy and/or Principal Harmony Stewart and/or Staff of the Child Care Program

**VIOLATION OF** *(Describe conduct or specify statute):*

62 P.S. §§ 911(a)(1)(b); 55 Pa. Code § 20.34; 55 Pa. Code § 3270.24

**DATE(S) OF VIOLATION:**

2-23-22 to present date

☐ **Warrant Application Approved by District Attorney – DA File No.** _____
*(If DA approval required per Pa.R.Crim.P. 202(A) with assigned File No. per Pa.R.Crim.P. 507)*

☒ **Additional Pages Attached (Other than Affidavit of Probable Cause)**

☒ **Probable Cause Affidavit(s) MUST be attached (unless sealed below)   Total number of pages: 25**

**TOTAL NUMBER OF PAGES IS SUM OF ALL APPLICATION, PROBABLE CAUSE AND CONTINUATION PAGES EVEN IF ANY OF THE PAGES ARE SEALED**

The below named Affiant, being duly sworn (or affirmed) before the Issuing Authority according to law, deposes and says that there is probable cause to believe that the items or property identified are evidence or the fruit of a crime, or are contraband, or are expected to be otherwise unlawfully possessed or subject to seizure, and that these items or property are or are expected to be located on the particular person or at the particular place described above. I certify that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

| *Signature of Affiant* | OCDEL, 11 Stanwix Street, Pittsburgh, PA 15222 *Agency or Address if Private Affiant* | N/A *Badge Number* |
|---|---|---|

Sworn to and subscribed before me this ___ day of _April_ , _2024_ . Mag. Dist. No. _05-2-19_

_Hilary K Wheatley_ _680 Washington Rd B103 Pittsburgh PA 15228_ **(SEAL)**
*Signature of Issuing Authority* *Office Address*

## SEARCH WARRANT
**TO LAW ENFORCEMENT OFFICER:**
WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described, and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

☒ This Warrant shall be served as soon as practicable and shall be served only between the hours of 6AM to 10PM but in no event later than:*

☐ This Warrant shall be served as soon as practicable and may be served any time during the day or night but in no event later than: **
_12:00_ _P_ M, o'clock _April 10_ , _2024_

☐ This Warrant shall be returned to judicial officer _____

* The issuing authority should specify a date not later than two (2) days after issuance. Pa.R.Crim.P. 205(4).
** If the issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit(s) and wishes to issue a nighttime warrant, then this block shall be checked. Pa.R.Crim.P. 206(7).

Issued under my hand this _8th_ day of _April_ , _2024_ at _12:15_

_Hilary K Wheatley_ _05-2-19_
*Signature of Issuing Authority* *Mag. Dist. or Judicial Dist. No.*

HILARY WHEATLEY,
MAGISTERIAL DISTRICT JUDGE
MAGISTERIAL DISTRICT 05-2-19
MY COMMISSION EXPIRES ON THE
FIRST MONDAY OF JANUARY 2028
**(SEAL)**

Title of Issuing Authority: ☒ Magisterial District Judge   ☐ Common Pleas Judge ☐ _____

☐ **For good cause stated in the affidavit(s) the Search Warrant Affidavit(s) are sealed for _____ days by my certification and signature.  (Pa.R.Crim.P. 211)**

_____ _____ **(SEAL)**
*Signature of Issuing Authority (Judge of the Court of Common Pleas or Appellate Court Justice or Judge).* (Date)

*TO BE COMPLETED BY THE ISSUING AUTHORITY*

**Commonwealth of Pennsylvania**

**COUNTY OF** Allegheny



**AFFIDAVIT OF PROBABLE CAUSE**

| Docket Number (Issuing Authority): | Police Incident Number: | Warrant Control Number: |
| --- | --- | --- |

*PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:*

Please see attached pages consisting of the Department of Human Services, Office of Child Development and Early Learning's, affidavit of probable cause to conduct an administive search warrant.

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.   I certify that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

| _____ | 4/8/24 | _____ | 4/8/24 | (SEAL) |
| Affiant Signature | Date | Issuing Authority Signature | Date | |

**Procedural History:**

1.      On February 23, 2022, the Department of Human Services ("DHS"), Office of Child Development and Early Learning ("OCDEL"), conducted an inspection at the South Hills Catholic Academy ("SHCA") located at 550 Sleepy Hollow Road, Pittsburgh, PA 15228-2661. During the inspection, which occurred after school hours and as part of SHCA's Guardian Angels Program ("GAP"), OCDEL observed two staff members caring for approximately 50 children at one time. On March 17, 2022, OCDEL issued SHCA a Cease & Desist ("C&D") Order to stop operating the GAP, an uncertified childcare facility.

2.      SHCA timely appealed the C&D Order with the administrative tribunal, the Bureau of Hearings and Appeals ("BHA").  SHCA also filed a Motion to Dismiss with BHA argued that OCDEL did not have jurisdiction to require the GAP to obtain a certificate of compliance/license ("COC") to operate.  BHA issued an Order denying SHCA's Motion to Dismiss.  SHCA filed an Interlocutory Appeal of BHA's Order with DHS's Secretary, but that appeal was denied on May 18, 2023.

3.      On June 2, 2023, SHCA filed a Petition for Review with Commonwealth Court, and, once again, raised the issue of OCDEL's jurisdiction to require SHCA to obtain a COC, among other legal issues.

4.      From February 23, 2022, until September 12, 2023, OCDEL conducted routine monitoring inspections at SHCA to assess and determine whether conditions at the facility posed a threat to the health and safety of the children.  During that time, OCDEL observed that approximately 17 to 50 children were in care and that only a few staff persons (sometimes only 2 to 3) were present during various inspections.  At no time during those inspections was OCDEL given permission or access to thoroughly conduct proper inspections to assess other childcare facility conditions that may pose a risk to children, nor did they have the opportunity to inspect file and records.

5.      On September 12, 2023, OCDEL was denied access to the GAP.  SHCA and DHS filed pleadings with Commonwealth Court for its decision on whether OCDEL could conduct monitoring inspections during the pendency of the litigation.  On December 20, 2023, the Court issued an Order staying OCDEL's inspections until "further order of **this** Court." (Exhibit A – Stay Order.)

6.      On January 11, 2024, Commonwealth Court issued its Opinion on SHCA's Petition for Review and affirmed BHA's Order denying SHCA's Motion to Dismiss for lack of jurisdiction. This Order by Commonwealth Court constituted a "further order of this Court" thereby nullifying the Stay Order.

7.      On February 9, 2024, SHCA filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court.  The PA Supreme Court docketed the appeal at 51 WAL 2024; however, the Court has not issued an order accepting the case.  Therefore, Commonwealth Court's January 11, 2024, Opinion is the most recent Opinion and Order addressing the legal issues raised by SHCA.

8.      On February 27, 2024, after receiving Commonwealth Court's Opinion and Order, OCDEL conducted an inspection at SHCA.  OCDEL observed 20 children playing outside.  OCDEL was given permission to enter inside the building where they observed 12 children who were sitting at a cafeteria table coloring or drawing and 4 children who were leaving the GAP.  In total, OCDEL observed 36 children in care and 2 staff persons and a third staff person who appeared to be a security guard.

9.      On March 20, 2024, OCDEL attempted to conduct another unannounced, routine monthly monitoring inspection at SHCA.  Upon arrival, SHCA's security guard denied OCDEL entry into the building.  OCDEL was told that SHCA's Principal instructed the security guard not to permit OCDEL to conduct further inspections.  When OCDEL attempted to look inside the glass window of the building to determine if children were present and safe, a staff person stood in front of the window in a manner to obstruct OCDEL's view inside.

**Legal Authority:**

10.     DHS has the statutory authority, and the duty, to make and enforce rules and regulations for a visitation, examination, and inspection of all supervised institutions, and said visitation, examination or inspection may occur **both before and after the beginning of operation of the supervised facility.** 62 P.S. § 911(a)(1).  Article IX of the Human Services Code states:

> [f]or these purposes and for the purpose of determining whether or not a facility should be subject to the supervision of the department in accordance with section 902, the secretary, or other officer, inspector or agent of the department, shall have free and full access to the grounds, premises, and buildings of and to all the records, books or papers of or relating to any such State or supervised institution, and full opportunity to interrogate or interview any inmate thereof, or any person or persons committed to or being detained, treated or residing therein, and all persons connected with any such State or supervised institution as officers, or charged with the management, thereof, by law or otherwise, or in any way having the care, custody, control, or management thereof, or connected therewith as employes, are hereby directed and required to give to the secretary, or to such officer, inspector or agent of the department, such means, facilities and opportunity for such visitation, examination, inquiry and interrogation, as is hereby provided and required, or as the department, by its duly ordained rules or regulations, may require.

62 P.S. § 911(b).

11.     Pursuant to Article IX of the Human Services Code, the Department has the legal authority to inspect the GAP.

12.     DHS's regulations also state that a facility or agency shall provide to authorized agents of the Department full access to the facility or agency and its records during both announced and unannounced inspections. 55 Pa. Code § 20.34. The facility or agency shall provide the opportunity for authorized agents of the Department to privately interview staff and clients. *Id.* A staff person shall provide to agents of the Department immediate access to the facility and, upon request, to the children and the files and records. 55 Pa. Code § 3270.24.

13.     55 Pa. Code Chapter 3270, child care centers, applies to facilities in which out-of-home care is provided, at any one time, for part of a 24-hour day to seven or more children, 15 years of age or younger, including: (2) care provided in private or public, profit or nonprofit facilities and/or (3) care provided before or after the hours of instruction in nonpublic schools and in private nursery schools and kindergartens. 55 Pa. Code § 3270.3(a)(2-3). "Facility" is defined as a childcare center. 55 Pa. Code § 3270.4. A "childcare center" is defined as the premises in which care is provided at any one time for seven or more children unrelated to the operator. *Id.*

14.     DHS has a statutory responsibility to supervise all children's institutions and determine whether any premises qualifies as a childcare center within this Commonwealth under 62 P.S. §§ 902; *St. Elizabeth's Child Care Center v. Dep't of Pub. Welfare*, 963 A.2d 1274, 1276-78 (Pa. 2009). To comply with its responsibilities to supervise children's institutions and determine whether any premises qualifies as a childcare center, DHS must ensure that the children's institutions within the Commonwealth follow the requirements as set forth in Titles IX of the Human Services Code and the applicable regulations. Thus, if DHS finds that any children's institution fails to comply with any of the above statutory or regulatory requirements, DHS has a duty to enforce the statutory and regulatory requirements.

15.     DHS respectfully requests that an administrative search warrant be issued to Affiant so that DHS can enter and inspect the GAP to assess the health and safety of the children. OCDEL's inspections include, but are not limited to, assessments of staff per child ratios, whether there are fire or equipment hazards, if children are being supervised appropriately, what procedures are in place should a child need emergency medical care, etc.

16.     An administrative agency may obtain a search warrant to inspect both residential and commercial settings to carry out the agency's duties and responsibilities. *Camara v. Municipal Court*, 387 U.S. 523, 528-529 (1967); *See v. Seattle*, 387 U.S. 541 (1967); *Warrington Township v. Powell*, 796 A.2d 761 (Pa. Cmwlth. 2002); and *1st Steps Int'l Adoptions v. Dep't of Pub. Welfare*, 880 A.2d 24 (Pa. Cmwlth. 2005).

17.     DHS has a legitimate interest in protecting the safety and welfare of children, especially when investigating unlicensed and illegally operating facilities. *St. Elizabeth's Child Care Center*, 963 A.2d at 1276-78.

18.     DHS need not have probable cause that a crime is occurring, but rather probable cause that they need to enter and inspect the premises to carry out their administrative duties and responsibilities. *Camara*, 287 U.S. at 538; and *Griffin v. Wisconsin*, 483 U.S. 868, 877 (1967).

**EXHIBIT A**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

South Hills Catholic Academy,                       :
                                    Petitioner      :
                                                    :
                    v.                              : No.  563 C.D. 2023
                                                    : Argued:  October 10, 2023
Department of Human Services,                       :
                                    Respondent      :

**PER CURIAM**            **MEMORANDUM AND ORDER**

NOW, December 20, 2023, before this Court are two applications by the Department of Human Servies (Department) and one application by South Hills Catholic Academy (Private School).  After considering the applications and corresponding answers, this Order will dispose of all three applications.

**The Department's Emergency Motion for Clarification**

On July 31, 2023 this Court issued an Order (Order) staying "all proceedings in the underlying action" (Stay Provision).  The Department's Emergency Motion for Clarification requests this Court clarify the Stay Provision with respect to whether the Department has the authority to inspect Private School pending the outcome of its appeal before this Court.  A "proceeding," in a legal context, generally deals with arguments, hearings, appeals and the like.  A proceeding is "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." Black's Law Dictionary 1457 (11th ed. 2019).  Furthermore, the Court's use of the phrase, "in the underlying action," was referring to the underlying litigation.  The parties agree that in response to the Court's Order, the parties informed the Department's Bureau of Hearings and

Appeals (the Bureau) that Private School's appeal of the Department's Cease and Desist Order should be stayed. In turn the Bureau granted the stay and cancelled the hearing scheduled for September 18, 2023.

Even though the Court narrowly stayed only the "proceedings," this Court also intended to stay the Department from attempting to conduct routine monitoring inspections as the very issue in this case is whether the Department has the authority to do so in the first place. To be clear, until further order of this Court, the Department is precluded from accessing the facility to conduct inspections. In retrospect, the Court agrees clarification was needed. Recognizing that a stay has been in place and a potential childcare facility has not been monitored, the Court has handled this matter on an expedited basis. The Order also provides: "This matter shall be expedited for briefing **and disposition** by the Court." (emphasis added.) Therefore, the Court GRANTS the Emergency Motion for Clarification as explained above.

### The Department's Application to Expedite

This Court has already, in the prior Order, provided that this matter "shall be expedited" for disposition. Additionally, this Court is already handling this matter on an expedited basis. Nonetheless, because the Court recognizes the state of flux pending disposition, the Court GRANTS the Application to Expedite.

### Private School's Application for Contempt and Sanctions

Private School bases its request for an order finding the Department in contempt and imposing sanctions upon the assertion that the Department violated the Stay Provision when the Department's certification staff attempted to inspect its facilities. The Stay Provision stated "[a]ll proceedings in the underlying action are stayed pending disposition." We agree with the Department that its certification

staff's attempt to inspect Private School was not a "proceeding."  We also agree, as explained above, that clarification was needed.  Mere noncompliance with a court order does not equate to contempt.  Rather, South Hills needs to establish that the Department (1) had notice of the order, (2) the Department voluntarily violated the order and (3) the Department acted with wrongful intent.  *See Commonwealth v. Honore*, 150 A.3d 521 (Pa. Cmwlth. 2016).  As explained above, we do not conclude the Department voluntarily violated the Order nor do we believe it acted with wrongful intent.  As a result, we conclude the Department did not violate the Stay Provision, and we DENY Private School's Contempt Application.

Order Exit
12/20/2023

**EXHIBIT B**

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| South Hills Catholic Academy, | : |
| Petitioner | : |
| | : |
| v. | : No. 563 C.D. 2023 |
| | : Argued: October 10, 2023 |
| Department of Human Services, | : |
| Respondent | : |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE WALLACE                          FILED:  January 11, 2024

South Hills Catholic Academy (Private School) petitions for review of the Department of Human Services' (the Department) May 18, 2023 order denying its appeal of an Administrative Law Judge's (ALJ) order that denied Private School's Motion to Dismiss the Department's March 17, 2022 cease and desist letter. In its cease and desist letter, the Department determined Private School's Guardian Angels Program (the Program) was an uncertified child care center and ordered Private School to stop operating the Program. In this appeal, which Private School asserts is an appeal as of right from a collateral order pursuant to Pennsylvania Rule of Appellate Procedure 313(b) (Rule 313(b)), Private School's primary argument is that the Department does not have jurisdiction to regulate the Program.

On June 6, 2023, the Department filed a Motion to Quash Private School's petition for review, arguing Private School is not entitled to appeal the Department's

May 18, 2023 order as of right because that order is not a collateral order pursuant to Rule 313(b). After the parties filed memoranda of law on this issue, this Court issued an Order on July 31, 2023, explaining it would rule on the Department's Motion to Quash along with the merits of Private School's appeal.

Upon review, we conclude the Department's May 18, 2023 order is a collateral order pursuant to Rule 313(b), entitling Private School to maintain this appeal as of right. As a result, we deny the Department's Motion to Quash. Because we agree with the Department's determination, however, we affirm the Department's order.

## I.    Factual and Procedural Background

Private School is a private, non-profit Catholic School in Mt. Lebanon, Pennsylvania. Private School readily admits it operates the Program, which "permits parents and guardians of enrolled students to drop students off up to 45 minutes prior to the first class in the morning and also permits students to remain after school up to 90 minutes after the last official class at the end of the school day." Petition for Review, 6/2/23, at 3.

On February 23, 2022, the Department sent a representative to Private School to conduct an inspection of the Program. Reproduced Record (R.R.) at 2. On March 17, 2022, the Department mailed a letter to Private School, determining Private School was "operating a child care center without the required certificate of compliance in violation of Department regulations" and ordering Private School to "cease and desist operation of [its] uncertified child care facility." *Id.* In the Department's March 17, 2022 letter, the Department asserted it had authority to close the Program because

> [t]he Department has supervisory authority over a nonprofit facility in which seven or more children unrelated to the operator receive care

2

([Sections 901-902 of the Human Services Code[1],] 62 P.S. §§ 901 –
902; 55 Pa. Code § 3270.3; St. Elizabeth's Child Care Center v. [Dep't
of Pub. Welfare], 963 A.2d 1274 (Pa. 2009)).   The Department's
regulations for child care centers are applicable to facilities in which
out-of-home care is provided, at any one time, for part of the 24-hour
day to seven or more children (55 Pa. Code § 3270.3(a)).   A child care
center is defined as any premises in which child care is provided
simultaneously to seven or more children who are not relatives of the
operator (55 Pa. Code § 3270.4).   Operation of a child care center
without a certificate of compliance from the Department is prohibited
(55 Pa. Code [§§ 20.1 – 20.82]; 55 Pa. Code § 3270.11(a)).

*Id.* The Department's letter also explained Private School's right to appeal. *Id.* at
3.

By letter dated March 29, 2022, Private School appealed the Department's
cease and desist letter. R.R. at 4.  The Department referred Private School's appeal
to its Bureau of Hearings and Appeals (BHA) for disposition. *Id.* at 5.  Before the
BHA was able to schedule a hearing on the merits of Private School's appeal, Private
School filed a Motion to Dismiss the Department's cease and desist letter (Motion
to Dismiss). *See id.* at 6-12.  In its Motion to Dismiss, Private School asserted the
Human Services Code (Code) does not provide the Department with jurisdiction to
regulate the Program. *Id.*

On December 28, 2022, ALJ Jacob Herzing (ALJ Herzing) held argument on
Private School's Motion to Dismiss. *See* Notes of Testimony (N.T.), 12/28/22, at 1-
45; R.R. at 13-57.  At argument, the Department's counsel conceded the purpose of
the hearing was to "rule on the motion to dismiss, based on the law, without any
regard to any facts of this case whatsoever." N.T., 12/28/22, at 11; R.R. at 23.  On
April 24, 2023, ALJ Herzing issued an Adjudication and Order, rendering the
following relevant findings of fact:

---

[1]  Formerly the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101-
1503.

1) [Private School] is located at 550 Sleepy Hollow Road, Pittsburgh, PA 15228.

2) [Private School] operates an independent non-profit Catholic school licensed by the Pennsylvania Department of Education.

3) [Private School] operates a "Guardian Angels" program that allowed parents and guardians of enrolled students to drop off their children up to 45 minutes prior to the start of school and pick up their children within 90 minutes after the end of the school day.

4) On February 23, 2022, the Department inspected [Private School] to determine whether [Private School] operated a child care center.

5) On March 17, 2022, the Department determined [Private School] operated a child care center.

6) On March 17, 2022, the Department ordered [Private School] to cease and desist the operation of the unlicensed child care center.

7) On April 12, 2022, [Private School] appealed the Department's March 17, 2022, cease and desist order.

R.R. at 70-72 (internal citations omitted). After reviewing the relevant provisions of the Code and the Department's regulations, ALJ Herzing concluded:

> [T]he Department's regulations require private academic schools who [sic] operate child care centers before and after the hours of instruction to be licensed and subject to Department regulatory oversight. In these situations, the legal entity must be dually licensed by the Department and the Pennsylvania Department of Education. Therefore, [Private School]'s licensure as a private academic school by the Pennsylvania Department of Education did not prohibit the Department from determining whether [Private School] operated a child care center or restrict the Department's regulatory oversight.

*Id.* at 77. Accordingly, ALJ Herzing denied Private School's Motion to Dismiss. *Id.*

4

Private School filed an interlocutory appeal of ALJ Herzing's order. *See* R.R. at 78-81. By order dated May 18, 2023 (Department's Order), the Department's Acting Secretary denied Private School's interlocutory appeal. *See* Certified Record (C.R.), Item #6. On June 2, 2023, Private School filed a Petition for Review in this Court.

On appeal, Private School argues the Department does not have authority to regulate its activities, and it requests we reverse the Department's Order and declare the Department "does not have jurisdiction over [Private School] and therefore no authority to issue a cease and desist order" to Private School. Petition for Review, 6/2/23, at 11. Private School also argues it should be immune from the Department's oversight due to its rights under various religious freedom clauses in the United States and Pennsylvania Constitutions.

## II.    Analysis

### A. Appealability of Order

Private School admits the Department's Order is appealable as of right only if it qualifies as a collateral order under Rule 313(b). Thus, we must determine if the Department's Order is a collateral order under Rule 313(b) before we can address the merits of Private School's appeal. "The appealability of an order under the [Pennsylvania Rule of Appellate Procedure] 313 collateral order doctrine presents a question of law, over which our standard of review is *de novo* and our scope of review is plenary." *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 365 (Pa. 2021) (citation omitted) (italics added). "The collateral order rule is to be applied narrowly, inasmuch as it is an exception to the rule of finality." *Colonial Sch. Dist. v. Montgomery Co. Bd. of Assessment Appeals*, 232 A.3d 1051, 1056 (Pa. Cmwlth. 2020) (citation omitted).

Pennsylvania Rule of Appellate Procedure 313, titled "Collateral Orders" states:

> **(a) General Rule.** An appeal may be taken as of right from a collateral order of a trial court or other government unit.
>
> **(b) Definition.** A collateral order is an order [(1)] separable from and collateral to the main cause of action where [(2)] the right involved is too important to be denied review and [(3)] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa. R.A.P. 313 (bold in original, clause numbers added).

Under the first prong of Rule 313(b)'s definition of a collateral order, "an order is separable from the main cause of action if 'it can be resolved without analysis of the merits of the underlying dispute' and if it is 'entirely distinct from the underlying issues in the case.'" *Shearer v. Hafer*, 177 A.3d 850, 858 (Pa. 2018) (quoting *Commonwealth v. Blystone*, 119 A.3d 306, 312 (Pa. 2015)). "If the order does not affect the merits of the underlying claim, it is separable." *Colonial Sch. Dist.*, 232 A.3d at 1057.

Under the second prong, "an issue is important if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by the final judgment rule." *Geniviva v. Frisk*, 725 A.2d 1209, 1213 (Pa. 1999) (citation omitted). "[I]t is not sufficient that the issue be important to the particular parties. Rather[,] it must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Id.* at 1214. "Generally, the implication of due process concerns is too important to be denied review." *Com. ex rel. Kane v. Philip Morris, Inc.*, 128 A.3d 334, 344 (Pa. Cmwlth. 2015). "[T]he essential elements of due process are notice and opportunity to be heard . . . before a tribunal having

6

jurisdiction over the matter." *Smires v. O'Shell*, 126 A.3d 383, 391 (Pa. Cmwlth. 2015) (quoting *Dep't of Transp., Bureau of Driver Licensing v. Clayton*, 684 A.2d 1060, 1064 (Pa. 1996)).

Under the third prong, we determine "whether a right is 'adequately vindicable' or 'effectively reviewable.'" *Geniviva*, 725 A.2d at 1213 (citation omitted). This question "cannot be answered without a judgment about the value interests that would be lost through rigorous application of a final judgment requirement." *Id.* "For instance, the substantial cost a party would incur in defending a claim may equate to an irreparable loss of a right to avoid the burden entirely." *Com. ex rel. Kane*, 128 A.3d at 345 (citation omitted).

The Department's Order meets the first prong of Rule 313(b)'s definition of a collateral order because the Department's Order denied only Private School's challenge to the Department's authority to regulate the Program. This is "entirely distinct from the underlying issues in the case," which are whether the Department can establish Private School violated the Department's regulations.[2] *See Shearer* 177 A.3d at 858.

Regarding the second prong of Rule 313(b)'s definition of a collateral order, the Department argues "the issue presented is a straightforward case involving application of a statutory scheme applicable just to [Private School]." Respondent's Br. at 10. This appeal, however, concerns whether the Department has jurisdiction to regulate a private school's provision of before and after school care for its students, which could have widespread implications for similarly-situated private schools throughout the Commonwealth. This is particularly true where, as here, the

---

[2]  Although the Department now asserts these issues are not separable from Private School's appeal, the Department's counsel understood and agreed at the hearing before ALJ Herzing that these issues are separable. *See* R.R. at 24-26.

parties do not yet have the benefit of this Court's decision resolving the issue of whether the Department has the authority to regulate the Program. For this reason, we have acknowledged that jurisdictional issues "are deeply rooted in public policy . . . and they merit immediate review." *Bethke v. City of Phila.*, 282 A.3d 884, 889 (Pa. Cmwlth. 2022). Accordingly, we conclude the Department's Order meets the second prong of Rule 313(b)'s definition of a collateral order.

Finally, regarding the third prong, the Department asserts Private School conceded at argument that it will have an opportunity to present this issue after its substantive appeal proceeds through the BHA. While this may be true, if we were to determine the Department's Order is not immediately appealable, Private School would be required to proceed through the BHA's appeal process, which would include an evidentiary hearing on the merits, and to cooperate with the Department's inspections pending our ultimate review of the jurisdictional issue. In doing so, Private School would "exhaust substantial resources, and its right to avoid the enhanced burden will be lost." *Com. ex rel. Kane*, 128 A.3d at 347-48. Thus, should Private School "ultimately prevail on this issue in a later appeal, the victory will be hollow" because it will have already had to litigate the underlying issues through the BHA's appeal process and permit the Department access to its facility. *Id.* at 348. With these concerns in mind, this Court has determined that claims that go to the "jurisdiction of the proceedings below . . . will be irretrievably lost if [a party] must continue litigating to a final judgment in the [lower tribunal]." *Bethke*, 282 A.3d at 889. Thus, we conclude the Department's Order satisfies the third prong of Rule 313(b)'s definition of a collateral order.

Having concluded the Department's order satisfies each prong of Rule 313(b)'s definition of a collateral order, Private School may pursue this appeal as of

right.  Consequently, we deny the Department's Motion to Quash, and we will proceed to evaluate the merits of Private School's appeal.

**B. The Department's Authority to Regulate the Program**

The Department believes it has authority to regulate the Program as a "child care center" and a "children's institution" under the Code and the Department's regulations.  Private School argues that the Program is not a "child care center" or a "children's institution" under the Code.  Instead, Private School argues it is only subject to the supervision of the Department of Education as a "school which is operated by a bona fide church or other religious body" under Section 1327(b) of the Public School Code of 1949[3] (School Code), 24 P.S. § 13-1327(b).

A large portion of Private School's arguments were rejected by our Supreme Court in *St. Elizabeth's Child Care Center*, which involved a Roman Catholic Church (the Church) operating a nonprofit child day care center.  *Id.* at 1274-75.  Noting that the Church did not have a certificate of compliance, the Department of Public Welfare (DPW), which changed its name to the Department in 2014,[4] ordered the Church to cease and desist operating its day care.  *Id.* at 1275.  The Church, referencing Article X of the Code's restriction of DPW's licensing powers to for-profit "child care centers," argued DPW lacked authority to promulgate regulations requiring certification of nonprofit child day care centers.  *Id.*  The Supreme Court, however, noted that Article IX of the Code "confers broad regulatory power on DPW, providing it with supervisory authority over 'all children's institutions within this Commonwealth.'"  *Id.* at 1276.  The Court further concluded that "as a private child day care provider, [the Church] qualifies as a children's institution subject to DPW's supervisory power."  *Id.*  Accordingly, the

---

[3]   Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 - 27-2702.

[4]   *See* Act of September 24, 2014, P.L. 2458.

Supreme Court determined the Department's regulations were valid, and that they could be applied equally to nonprofit and for profit child care centers. *Id.*

To the extent Private School asserts the Department cannot regulate it because it is a nonprofit institution, *St. Elizabeth's* clearly refutes those arguments. The remainder of Private School's arguments attempt to distinguish *St. Elizabeth's* on the basis that the Program is part of "a day school which is operated by a bona fide church or other religious body" under Section 1327(b)(2) of the School Code. Section 1327(b)(2) states:

> It is the policy of the Commonwealth to preserve the primary right and the obligation of the parent or parents, or person or persons in loco parentis to a child, to choose the education and training for [a child enrolled in a day school which is operated by a bona fide church or religious body]. Nothing contained in **this act** shall empower the Commonwealth, any of its officers, agencies or subdivisions to approve **the course content, faculty, staff or disciplinary requirements** of any religious school referred to in this section without the consent of said school.

24 P.S. § 13-1327(b)(2) (emphasis). Private School argues Section 1327(b)(2) shows the General Assembly's "hands off approach to religious schools" and "recognizes the need to separate governmental interference from these schools." *See* Petitioner's Br. at 21, 23. Private School also argues the Program is part of its operations, and, therefore, should only be subject to the Department of Education's limited oversight. *Id.* at 23.

Private School's arguments present us with questions of statutory interpretation, which are pure questions of law and are "subject to a *de novo* standard of review" and a plenary scope of review. *St. Elizabeth's*, 963 A.2d at 1276 (citations omitted). When our scope of review is plenary, we may review the entire record. When our standard of review is *de novo*, we may fully reconsider the issue. *Passel*

*v. Dep't of Transp., Bureau of Driver Licensing*, 928 A.2d 381, 383 (Pa. Cmwlth. 2007). When interpreting a statute, we "apply the Statutory Construction Act,[5] which directs us to ascertain and effectuate the intent of the General Assembly." *Johnson v. Phelan Hallinan & Schmieg, LLP*, 235 A.3d 1092, 1097 (Pa. 2020) (citing 1 Pa.C.S. § 1921(a)). "Generally, a statute's plain language provides the best indication of legislative intent." *Id.* (citation omitted). Where the language in a statute is clear, words and phrases contained in the statute must be construed in accordance with their common and accepted usage. 1 Pa. C.S. § 1903(a). "Only when the words of a statute are ambiguous will we resort to other considerations to discern legislative intent." *Johnson*, 235 A.3d at 1097 (citing 1 Pa.C.S. § 1921(c)). We are also mindful that "'[t]he interpretation of a statute by those charged with its execution is entitled to great deference, and will not be overturned unless such construction is clearly erroneous.'" *St. Elizabeth's*, 963 A.2d at 1277 (citation omitted).

Section 1327(b)(2)'s restrictions are limited to "this act," which clearly refers to the School Code, not all laws enacted by the General Assembly. *See* 24 P.S. § 13-1327(b)(2). In addition, Section 1327(b)(2) only limits governmental interference with "any religious school['s]" "course content, faculty, staff or disciplinary requirements." *Id.* These restrictions relate to a school's educational programming. Accordingly, we reject Private School's arguments that Section 1327(b)(2) of the School Code completely prohibits the Department from regulating any activities conducted at a religious school's facilities.

Private School also argues the Department's regulations do not apply to the Program. Specifically, Private School believes it is exempt from Section 3270.3 of

---

5 Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501 – 1991.

the Department's regulations, which extends the Department's regulatory authority to "care provided before or after the hours of instruction in **nonpublic schools** and in private nursery schools and kindergartens." *See* 55 Pa. Code § 3270.3 (emphasis added); Petitioner's Br. at 33. Private School asserts that "nonpublic school" is used in the School Code separately and distinctly from a "day school which is operated by a bona fide church or other religious body." *See* 24 P.S. § 13-1327. Because Private School is regulated by the Department of Education as a school operated by a bona fide church, Private School asserts it is not a "nonpublic school."

Initially, we note that the School Code does not control our interpretation of the Department's regulations. Because "nonpublic school" is not defined in the Department's regulations, we may construe it in accordance with its common and accepted usage. *See Quest Diagnostics Venture, LLC v. Com.*, 119 A.3d 406, 412 (Pa. Cmwlth. 2015) ("The statutory construction rules equally apply to the interpretation of an agency's regulations.") (citation omitted); 1 Pa. C.S. § 1903(a). Private School is not a public school. Therefore, Private School would qualify as a "nonpublic school" under that term's common usage. The Department's regulations' use of "public school" supports this interpretation. Specifically, the Department's regulations categorize a school as either public or private, without differentiating categories of private schools. *See, e.g.*, 55 Pa. Code § 3270.4 ("a public or private school system"); 55 Pa. Code § 3270.241 ("If a child is required to be enrolled in a public or private school under the Public School Code of 1949 . . .").

Even if we looked to the School Code for guidance in defining "nonpublic school" in the Department's regulations, as Private School urges us to do, the School Code does not support Private School's argument. In most respects, the School

12

Code's use of "nonpublic school" applies to all schools that are not public schools.[6] The School Code only treats "day school[s] which [are] operated by a bona fide church or other religious body" differently than other nonpublic schools in limited circumstances that serve a particular purpose.[7]   Accordingly, we reject Private School's arguments and conclude Private School qualifies as a "nonpublic school" under Section 3270.3 of the Department's regulations.  *See* 55 Pa. Code § 3270.3.

For the reasons set forth above, we reject Private School's arguments that the law provides with certainty the Department cannot regulate the Program.  At this stage of these proceedings, we are not being asked to determine whether the Program provides child care and is, therefore, subject to the Department's regulations. Instead, the Department will bear the burden of proof before the BHA to establish

---

[6]   *See, e.g.*, Sections 1504-J and 1507-J of the School Code, added by the Act of June 28, 2019, P.L. 146, 24 P.S. §§ 15-1504-J, 15-1507-J ("public schools or nonpublic schools"); Sections 923.1-A and 923.2-A of the School Code, added by the Act of September 26, 1978, P.L. 771, 24 P.S. §§ 9-923.1-A, 9-923.2-A ("'Nonpublic school' means any nonprofit school, other than a public school within the Commonwealth of Pennsylvania, wherein a resident of the Commonwealth may legally fulfull the compulsory school attendance requirements . . . ."); Section 923-A of the School Code, added by the Act of July 12, 1972, P.L. 863, 24 P.S. § 9-923-A ("'Nonpublic school' means any school, other than a public school within the Commonwealth of Pennsylvania, wherein a resident of the Commonwealth may legally fulfill the compulsory school attendance requirements of this act . . . .") ("Approximately one quarter of all children in the Commonwealth, in compliance with the compulsory attendance provisions of this act, attend nonpublic schools"); Section 1213 of the School Code, 24 P.S. § 12-1213 ("public or nonpublic schools").

[7]   *See* Section 1613(b) of the School Code, 24 P.S. § 16-1613(b) (providing minimum courses for high school graduation in schools operated by a bona fide church or other religious body); Section 1327(b) of the School Code, 24 P.S. § 13-1327(b) (establishing minimum curriculum requirements for schools operated by a bona fide church or other religious body, and exempting those schools from the Department of Education's curriculum requirements which apply to public schools and other nonpublic schools).

Private School's operation of the Program constitutes child care in violation of the Code.[8]

## C. Private School's Constitutional Arguments

Private School raised several arguments on appeal related to its religious freedom under the United States and Pennsylvania Constitutions. The Department responds by asserting Private School waived those arguments by not raising them before the Department. While a party must typically raise an issue before a governmental unit to preserve the issue for our review, a party can raise questions involving the validity of a statute for the first time on appeal. *See* Section 703 of the Administrative Agency Law,[9] 2 Pa.C.S. § 703(a). To raise questions involving the validity of a statute for our review, a party does not have to include the issue in its petition for review, but must include the issue in its statement of questions involved in its brief. *See* Pa.R.A.P. 1513(d), 2116. In addition, the Pennsylvania Supreme Court has explained that only facial constitutional challenges, not as applied constitutional challenges,[10] question the validity of a statute. *See Lehman v. Pa. State Police*, 839 A.2d 265, 275-76 (Pa. 2003).

---

[8] While a school's mandatory educational programming is only subject to the Department of Education's regulations, a non-mandatory program could be subject to the Department of Education's regulations, the Department of Human Services' regulations, or both. This Court's recent decision in *State College Area School District v. Department of Human Services* (Pa. Cmwlth., No. 337 C.D. 2022, filed October 2, 2023), explained this distinction, as well as several other factors for determining whether a school program qualifies as child care under the Code.

[9] 2 Pa.C.S. §§ 501-508, 701-704.

[10] There are two types of constitutional challenges: facial challenges and as applied challenges. *Nigro v. City of Phila.*, 174 A.3d 693, 699 (Pa. Cmwlth. 2017) (citation omitted). A facial challenge "tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *Peake v. Com.*, 132 A.3d 506, 517 (Pa. Cmwlth. 2015) (citation omitted). "A statute is facially unconstitutional only where there are no circumstances under which the statute would be valid." *Germantown Cab Co. v. Phila. Parking Auth.*, 206 A.3d 1030, 1041 (Pa. 2019). "[A]n as-applied [challenge] . . . does not contend that a law is **(Footnote continued on next page...)**

The record confirms the first time Private School raised its constitutional challenges in this matter was in the statement of questions involved in its brief before this Court.  Therefore, Private School waived review of any as applied constitutional challenges[11] by failing to raise them before the Department.  *See Lehman*, 839 A.2d at 276.  Private School preserved its facial constitutional challenges, however, by raising them in the statement of questions involved in its brief.  *See id.*; Pa.R.A.P. 1513(d), 2116.

Private School's facial challenges assert the Department's regulations violate the establishment and free exercise clauses of the First Amendment to the United States Constitution[12] and the freedom of conscience and religious practices clause of article I, section 3 of the Pennsylvania Constitution.[13]  Private School asserts the Department's regulations would require religious schools to complete an orientation before operating a child care center and to complete ongoing professional development training.  *See* Petitioner's Br. at 38.  Private School also asserts the Department's regulations require compliance with federal and state civil rights laws from which religious schools are exempt.  *Id.* at 38-39.  Accordingly, Private School believes the Department's regulations impermissibly infringe upon a religious

---

unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Weissenberger v. Chester Cnty. Bd. of Assessment Appeals*, 62 A.3d 501, 505 (Pa. Cmwlth. 2013) (citation omitted). "[A]n as-applied challenge will not necessarily invalidate a law given that a law 'may operate in an unconstitutional way as to one particular individual or company, as to which it may be declared void, and yet may, as to others still be effective.'" *Nigro*, 174 A.3d at 700 (quoting *Pennsylvania R. Co. v. Driscoll*, 9 A.2d 621, 632 (Pa. 1939)).

[11] Private School's arguments begin by sounding as facial challenges, yet appear to develop into as applied challenges.

[12] U.S. Const. amend. I.

[13] Pa. Const. art. I, § 3.

15

school's ability to hire staff "based upon their religious beliefs and their ability to transmit those beliefs to the individuals they instruct." *Id.* at 39.

On remand from the Pennsylvania Supreme Court in *St. Elizabeth's*, this Court considered similar constitutional arguments and evaluated what level of scrutiny to apply to the contested regulations. *See St. Elizabeth's Child Care Center v. Dep't of Pub. Welfare*, 989 A.2d 52, 55-56 (Pa. Cmwlth. 2010) (*St. Elizabeth's II*). Ultimately, this Court did not determine whether to apply rational basis scrutiny or a heightened level of scrutiny because we recognized that the Church needed to "establish that the application of [the Department's] regulations substantially burdens" its constitutional rights as a threshold matter. *Id.* at 55. In *St. Elizabeth's II*, we rejected arguments that the Department's regulations infringed upon the Church's hiring ability, as follows:

> St. Elizabeth's asserts that the regulations in Chapter 20 place restrictions on the center's hiring decisions.  For example, St. Elizabeth's complains that "Appendix A – Civil Rights Compliance-Statement of Policy," . . . requires child care facilities to implement civil rights policies and procedures in accordance with applicable civil rights laws, thereby requiring that St. Elizabeth's employment action be taken without regard to religious creed.  St. Elizabeth's notes that federal and state civil rights laws include exemptions for religious facilities but that DPW's regulations do not.  However, we accept DPW's construction of this provision as a statement of policy that merely requires compliance with existing statutes and regulations and does not impose additional requirements.  We also note that each of the civil rights laws that otherwise affect religious organizations . . . contain an exception for religion that would preclude the kind of interference or control that St. Elizabeth's fears will result.

*St. Elizabeth's II*, 989 A.2d at 56.  The Department's regulations continue to require only "compliance" with existing civil rights statutes and regulation, from which religious schools are exempt.  Therefore, we reject Private School's contention that

reference in the regulations to various civil rights laws infringes upon a religious school's employment decisions.

With regard to Private School's other asserted concerns, similar to the Church in *St. Elizabeth's II*, Private School "has not explained how the regulations at issue interfere with the facility's ability to communicate Church teachings," and has "failed to identify any actual or imminent infringement upon [its] right." *Id.* at 56, 57. Accordingly, Private School's "constitutional claims necessarily fail." *Id.* at 57.

### III.    Conclusion

For the reasons set forth above, we deny the Department's Motion to Quash Private School's petition for review and affirm the Department's Order.


_____
STACY WALLACE, Judge


Judge McCullough did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

South Hills Catholic Academy,　　　　　:
　　　　　　　　　Petitioner　　:
　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　: No.  563 C.D. 2023
　　　　　　　　　　　　　　　　:
Department of Human Services,　　　:
　　　　　　　　　Respondent　:

## O R D E R

**AND NOW**, this 11th day of January 2024, the Department of Human Services' (the Department) Motion to Quash South Hills Catholic Academy's petition for review is **DENIED** and the Department's May 18, 2023 order is **AFFIRMED**.

_SWallace_
STACY WALLACE, Judge

Order Exit
01/11/2024