IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOUTH HILLS CATHOLIC ACADEMY,<br><br>Plaintiff,<br><br>v.<br><br>PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES, VALERIE A. ARKOOSH, in her official capacity as Secretary of the Pennsylvania Department of Human Services, OFFICE OF CHILD DEVELOPMENT AND EARLY LEARNING, BUREAU OF CERTIFICATION, SHARON ARABIA, in her official and individual capacities as Acting Director, Office of Child Development and Early Learning, KRISTEN COURT, in her official and individual capacities as a Certification Representative for the Department of Human Services, Office of Child Development and Early Learning, Bureau of Certification, JOYCE PURCELL, in her official and individual capacities as a Certification Representative for Department of Human Services, Office of Child Development and Early Learning, Bureau of Certification, AMY CARNICELLA, in her official and individual capacities as Counsel for Department of Human Services, Office of Child Development and Early Learning, Bureau of Certification, and EUGENE CUCCARESE, in his official and individual capacities as Counsel for Department of Human Services, Office of Child Development and Early Learning, Bureau of Certification,<br><br>Defendants. | CASE NO. 2:24-cv-00676<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PROPOSED ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRINING ORDER**<br><br>*Jury Trial Demanded* |

**MEMORANDUM OF LAW IN SUPPORT OF PROPOSED ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

AND NOW, comes Plaintiff, by and through its undersigned Counsel, and in support of its Proposed Order to Show Cause for Preliminary Injunction and Temporary Restraining Order states as follows:

## I. Introduction

The plaintiff in this action is South Hills Catholic Academy (the "School"), a private catholic elementary school located in Mt. Lebanon, Allegheny County, Pennsylvania. As part of its school program, students are permitted to arrive to school early and/or stay late for enrichment purposes. Defendants contend that they have regulatory powers over the School due to the ongoing enrichment program. The issue regarding whether the Department of Human Services has any regulatory oversight over this particular school program is being litigated in court, and two judicial bodies have issued stays while the fundamental issue of jurisdiction is decided.

However, notwithstanding the judicially entered stays, and without specific statutory or regulatory authority, Defendants have refused to wait for the judicial process to be completed; purposefully declined to provide any notice to the School or opportunity for it to be heard on the topic of its searches and inspections; and instead have illegally acted without due process of law in overzealous attempts to regulate the private School through unconstitutional searches.

Beginning on February 23, 2022, Defendants have used a warrantless "inspection" process to compel the School to provide access to its property and its students without consent. Complaint, ¶¶ 25;41. On March 20, 2024 the School denied entrance to the Defendants, citing to a judicially entered stay that occurred on March 5, 2024. *Id*., ¶¶ 44-45.

On April 9th, with no prior notice, Defendants appeared on the School property, while School activities were occurring and young students were present, ostensibly pursuant to a district

magistrate issued search warrant to "inspect" the School. The enabling statute and regulations that give Defendants their authority do not provide for the ability to obtain a search warrant of any kind; rather, Defendants are instructed to pursue a completely different remedy, albeit one that allows for due process. Furthermore, Defendants concealed from the issuing authority the fact that the Bureau of Hearings and Appeals ("BHA"), the administrative arm of Defendant agency, recently issued a stay in the proceedings, at the request of the Defendant agency. This information was not presented to the magistrate when Defendants obtained the search warrant, thereby further misrepresenting the situation and compounding the violation of the School's rights.

After Defendants unlawfully searched the Plaintiff's property, undersigned counsel sent correspondence to Defendant Carnicella, counsel for Defendant agency, and informed Defendants that their activities on April 9, 2024 were illegal and constitutionally infirm, and essentially asked what the Defendants' intentions were going forward. On April 15, 2024, undersigned counsel received a response from Defendant Carnicella: "Kathryn -  In response to your letter dated April 12, 2024, it remains the Department's position that on January 11, 2024, when Commonwealth Court issued its Opinion and Order addressing your client's Petition for Review, that Order constituted further order of the Court, thereby nullifying the Stay Order dated December 20, 2023. Additionally, ***the Department's position that it is authorized to enter and inspect the GAP pending appeal in accordance with the law and its policies and procedures remains unchanged***." A true and correct copy of undersigned counsel's April 12, 2024 correspondence and Defendant Carnicella' s April 15, 2024 response is attached hereto as **Exhibits A and B,** respectively. (emphasis supplied).

Plaintiff now seeks a temporary restraining order and preliminary injunction to enjoin Defendants from unlawfully depriving the School of its constitutional rights by conducting any

further illegal and improper searches on its property until a final determination is made on the pending appeal of the School.

## II. Standard applicable to the grant of a temporary restraining order ("TRO") or preliminary injunction

When deciding whether to grant a TRO or preliminary injunction this court must consider whether the movant has demonstrated that it will be successful on the merits – which is a requirement of a "showing significantly better than negligible but not necessarily more likely than not." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).  A movant must also show it is more likely than not to suffer irreparable harm in the absence of preliminary relief.  *Id*.  In addition, the court, when considering whether to grant a TRO or preliminary injunction, should take into account, when they are relevant, "(3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."  *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)(*citations omitted*). The court should issue the TRO in this matter to prevent further constitutional deprivation of the Plaintiff.

## III. Argument

A. **The School is Likely to Succeed on the Merits Because the Defendants Utterly Disregarded Their Own Enabling Statute and Controlling Caselaw When they Conducted Warrantless Searched and Obtained and Executed (Without Notice) a Search Warrant on the School**

The first prong of the test requires Plaintiffs to show a reasonable probability of success on the merits.  Defendants continuously and unabashedly assert they have the right pursuant to "the law" and "their policies and procedures" to trample Plaintiff's constitutional rights with illegal searches of Plaintiff's property.  However, neither the legal authority Defendants cited in the search warrant served on Plaintiff on April 9, 2024 (the "Search Warrant") nor Defendant agency's

4

enabling legislation provide any articulated legal right.  This lack of process followed is a clear violation of the School's procedural and substantive due process rights under Section 1983 of the U.S. Constitution as more fully set forth in the Complaint in this matter.

    1.    <u>The Enabling Statute of DHS Does Not Authorize Obtaining a Search Warrant</u>

Beginning at paragraph 10 of the Affidavit of Probable Cause attached to the Search Warrant[1], Defendants list the "legal authority," ostensibly to obtain the Search Warrant.  First, Defendants cite to §911 of the Human Services Code[2], 62 P.S. §911.  Specifically, Defendants cited §911(b) in the Affidavit of Probable Cause which states:

(b) For these purposes and for the purpose of determining whether or not a facility should be subject to the supervision of the department in accordance with section 902, the secretary, or other officer, inspector or agent of the department, shall have free and full access to the grounds, premises, and buildings of and to all the records, books or papers of or relating to any such State or supervised institution, and full opportunity to interrogate or interview any inmate thereof, or any person or persons committed to or being detained, treated or residing therein, and all persons connected with any such State or supervised institution as officers, or charged with the management, thereof, by law or otherwise, or in any way having the care, custody, control, or management thereof, or connected therewith as employes, are hereby directed and required to give to the secretary, or to such officer, inspector or agent of the department, such means, facilities and opportunity for such visitation, examination, inquiry and interrogation, as is hereby provided and required, or as the department, by its duly ordained rules or regulations, may require.

62 P.S. § 911

With no analysis or further review of Article IX of the Human Services Code, Defendants simply conclude in the Probable Cause Affidavit, "[p]ursuant to Article IX of the Human Services Code, the Department has the legal authority to inspect [the School]." (¶11, Probable Cause Affidavit, Exhibit 1 to Plaintiff's Complaint).

---

[1] A true and correct copy of the Search Warrant is attached as Exhibit 1 to Plaintiff's Complaint.
[2] The Pennsylvania Human Services Code (formerly the Public Welfare Code) is found at 62 P.S. §§101-1503.

However, unlike other Pennsylvania statutes that provide specific and enumerated ability to the Defendant agency to obtain a search warrant in order to inspect a facility, Article IX of the Human Services Code (and its attendant regulations at Title 55 of the Pennsylvania Code) provide no such authorization. Instead, §921 of the Human Services Code instructs Defendant agency to "request the Department of Justice to institute appropriate legal proceedings to enforce compliance therewith, and the department may withhold any State money available for such institution until such officer or officers comply with such direction." 62 P.S. §921.

    (a)    Defendants Were Required to Seek a Restraining Order or Injunction

Sections 1051-1059 of Article X of the Human Services Code outline how Defendant agency can obtain an injunction against an "unlicensed institution." *Id*. at §1052. There is a similar section regarding the ability of Defendant agency to obtain an injunction against an ongoing violation of the laws or the rules and regulations of the Defendant agency. *Id*. at §1053. Most importantly for this case, section 1055 outlines how the Defendant agency should proceed when the Department "shall have ordered the person to refrain from conduct violating the rules and regulations of the department and the person deeming himself aggrieved by such refusal or revocation or order shall have ***appealed the action of the department***. . ." *Id*. at §1055 (emphasis supplied). Defendant agency is directed by statute in that instance to, "during the pendency of such appeal," ***<u>obtain a restraining order or injunction</u>***. *Id*. (emphasis supplied). The entirety of the section reads quite plainly:

> Whenever the department shall have refused to grant or renew a license, or shall have revoked a license required by law to operate or conduct a private institution, or shall have ordered the person to refrain from conduct violating the rules and regulations of the department and the person deeming himself aggrieved by such refusal or revocation or order shall have appealed the action of the department, the court may, during pendency of such appeal, issue a restraining order or injunction upon proof that the operation of the private institution or its failure to comply with the order of the department adversely affects the well-being and safety of the patients or inmates in the private institution.

6

62 P.S. § 1055

In stark contrast to the lack of specific authorization by the Human Services Code to Defendant agency to obtain a search warrant, Defendant agency is clearly authorized in other, distinct, unrelated and separate areas under their purview to obtain a search warrant. For example, the Older Adult Daily Living Centers Licensing Act, §§ 1511.1-1511.22 provides authority for a search warrant at §1511.18. *See*, 62 P.S. §1511.18[3].

It is well settled in statutory interpretation that a court may not supply omissions in a statute, especially where it appears that the matter may have been intentionally omitted. *L.S. ex rel. A.S. v. Eschbach,* 874 A.2d 1150, 1156 (Pa. 2005). Similarly, where the legislature includes specific language in one section of a statute and excludes it from another section, the language may not be implied where excluded. *Fonner v. Shandon, Inc.*, 724 A.2d 903, 907 (Pa. 1999). "Where a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show the different legislative intent." *Id*. The Supreme Court has also acknowledged that it cannot view statutes in a vacuum when interpreting a statute: "[T]he court will not look merely to a particular clause . . . but will take in connection with it the whole statute . . and the objects and policy of the law, as indicated by its various provisions, and give it

---

[3] There are numerous other examples wherein the legislature determined it prudent to provide certain government agencies with authority to obtain search warrants in order to effectuate the duties proscribed under the provisions of the various statutory enactments. For example, the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780-1 – 780-144 authorizes the use of administrative warrants and inspections at §780-124, with such activity to be carried out by "officers or employees designated by the secretary." 35 P.S. §780-124(b)(2). Similarly, the state Solid Waste Management Act authorizes the Department of Environmental protection to obtain a search warrant upon probable cause. 35 P.S. §6018.609.

such a construction as will carry into execution the will of the Legislature." *Kokoszka v. Belford*, 417 U.S., 642, 650 (1974)(citations omitted).

Pursuant to the statute that provides the powers and authority as cited by Defendants in the Search Warrant, the Pennsylvania legislature has not authorized the use of a search warrant in these circumstances, making the activities of April 9, 2024 by the Defendants unlawful, illegal and a violation of the School's procedural and substantive due process rights.

      (b)      There is no General Right for Pennsylvania Government Agencies to Obtain "Administrative Warrants"

Notwithstanding that there is no authority for Defendants to have obtained a search warrant in the first instance, Defendants assert in the Probable Cause Affidavit a general proposition that "[a]n administrative agency may obtain a search warrant to inspect both residential and commercial settings to carry out the agency's duties and responsibilities." (¶16, Probable Cause Affidavit, Exhibit 1 to Plaintiff's Complaint). Defendants then cite to United States Supreme Court precedent to support this contention, a notion that has been disabused in a recent Pennsylvania Supreme Court decision, *In re Y.W.-B*, 265 A.3d 602 (2021).

    2.    U.S. Supreme Court decisions and "Administrative" Search Warrants

DHS relied on the U.S. Supreme Court decisions *Camara v. Municipal Court,* 387 U.S. 523 (1967) and *See v. City of Seattle*, 387 U.S. 541 (1967) as its authority in the Probable Cause Affidavit for it to obtain an administrative search warrant. (¶16, Probable Cause Affidavit, Exhibit 1 to Plaintiff's Complaint). However, neither of these decisions grants the ability of government agencies to ignore the Fourth Amendment or due process rights.

The *Camara* Court held that administrative searches of dwellings were significant intrusions upon the interests protected by the Fourth Amendment and that such searches conducted without warrant procedures lacked the traditional safeguards guaranteed by the Fourth

8

Amendment. *Camara*, 387 U.S. at 534. In an opinion written by Justice White, *Camara* rules that ordinances authorizing the inspection of private residences without the protection of a warrant procedure and without the consent of the occupants are unconstitutional. *Id*. at 540.

In *See*, the Supreme Court declared that so far as administrative searches are concerned, the "businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." 387 U.S. 541, 543 (1967). The Court concluded that "administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure." *Id*. at 545. Accordingly, the Court concluded, "appellant may not be prosecuted for exercising his constitutional right to insist the fire inspector obtain a warrant authorizing entry upon appellant's locked warehouse." *Id* at 546. The Court noted, however, that as to the constitutionality of licensing programs that require an inspection, the constitutionality "can only be resolved, as many have been in the past, on a case-by-case basis under the general Fourth Amendment standard of reasonableness." *Id*.

Nowhere within *Camara* or *See* does the Court countenance an administrative agency obtaining a search warrant where it is not specifically authorized by statute; during a judicially imposed stay of agency action, and through the use of inaccurate, incomplete and biased information, as was done by the Defendants in obtaining the Search Warrant on April 8th. As noted by the *Camara* Court, the basic purpose of the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara*, 387 U.S. at 528. The School's reasonable expectation of privacy and security of its students, teachers and staff has been trampled by the actions of Defendants in their activities of April 9th at the School.

Since the time of *Camara* and *See*, the Supreme Court has had the occasion to review the use of "administrative search warrants." *See, Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984)(noting that an administrative search may proceed with only a subpoena where the subpoenaed party is sufficiently protected by the opportunity to "question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it, by raising objections in an action in district court."); *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015)(ordinance was found to be unconstitutional because it failed to provide hotel operators with precompliance review).

Citing to *See*, the Court in *Patel* held that "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Patel*, 576 U.S. at 420. The Court states further, "[a]bsent an opportunity for precompliance review, the ordinance creates an intolerable risk that searches authorized by it will exceed statutory limits, or be used as a pretext to harass hotel operators and their guests." *Id.* at 421.

3. The Pa. Supreme Court's 2021 decision in *Y.W.-B*. Strengthens and Emphasizes the Standard and Requirements for Probable Cause and Completely Undercuts the Defendants' Position That a Warrant, Without Notice is Authorized

The Fourth Amendment establishes the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no [w]arrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Article I, Section 8 of the Pennsylvania Constitution, provides:

§ 8. Security from searches and seizures

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or

10

things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

   PA. CONST. art. I, § 8.

   *In re Y.W.-B*, 265 A.2d 602 (2021), the Philadelphia Department of Human Services received an anonymous report that a mother was homeless and had failed to feed one of her children during the prior eight (8) hour period; this led to the City DHS obtaining an order to enter and inspect the family residence. *Y.W.*, 265 A.3d at 611. The question before the Court was whether there was sufficient probable cause for the City DHS to obtain the order to enter the home without the mother's consent.

   Interestingly, and in contrast to the actions of the Defendants in the within case, the City DHS, prior to entering mother's home, went to court and filed a Petition to Compel; the court held a hearing on the petition, and the mother appeared at the hearing to testify. *Id*. The trial court found that there was probable cause and granted the petitions to compel. *Id*. The City DHS conducted an inspection and reported back to the court that the home was safe and suitable for the children; the court dismissed the motion to compel. *Id*. at 612. Mother filed an appeal of the order compelling the inspection, arguing that the determination the City DHS had established probable cause violated her constitutional rights. Both the trial court and the Pa. Superior Court affirmed the issuance of the order to compel. *Id*. at 613-14. However, even the Superior Court considered "the different purposes of child protective laws and criminal laws as reflected in the procedural differences for obtaining a warrant in a criminal case and a motion to compel in a child welfare case. For instance, ***in criminal law, the procedure to obtain a search warrant is entirely ex parte such that the target of the search has no opportunity to challenge the allegations contained in the warrant application or affidavit before the warrant issues***. (citations omitted)(emphasis

11

added). In contrast, under the CPSL, trial courts may **<u>conduct an evidentiary hearing before the issuance of an order</u>** granting a search of the home, at which time the parents may cross-examine witnesses, testify on their own behalf, and otherwise challenge the evidence put forth in support of the motion to compel. *Id*. at 614 (emphasis added).  Ultimately, the Superior Court held:

> an agency may obtain a court order compelling a parent's cooperation with a home visit upon a showing of a fair probability that a child is in need of services, and that evidence relating to that need will be found inside the home. In making a probable cause determination, however, ***the trial court may consider evidence presented at a hearing on the petition***, as well as the court's and the agency's prior history to the extent it is relevant.

*Id*. (citations omitted)(emphasis added).

Even though the mother had notice and participated at the trial court hearing on the motion to compel, mother filed an appeal to the Pa Supreme Court arguing three aspects of constitutional protection that were eliminated in the decisions of the lower courts: (1) the order to compel had to state with particularity the area and items targeted by the search; (2) an assessment of the reliability of the source of the information upon which probable cause was based must be conducted; and (3) probable cause requires a nexus between more than just vague allegations.  *Id*. at 615-16.

The Court reviewed the Child Protective Services statute and its regulations, and found that pursuant to a portion of the regulations, the county agency is permitted to "initiate court proceedings if a home visit . . .is refused by the parent." *Id*. at 617.  The City DHS argued that "the protection of children is an essential societal value and thus the interest it serves" are more worthy than the mother's interests.  *Id*. at 619.  Citing *Camara, infra* for the proposition that it is not entering the home to search for evidence of a crime, but rather is conducting a "minimally invasive spot-check." *Id*.

The Court disagreed and found persuasive the Third Circuit opinion in *Good v. Dauphin County Social Services for Children and Youth*, 891 F.2d 1087 (3d Cir. 1989)[4]. In addition, the Court found that the *Camara* case, relied upon by the City DHS, did not support its position.

> *Camara* has no application with respect to home visits to investigate allegations of child neglect. Unlike in *Camara*, which involved an agency's decision to conduct an area inspection based upon its appraisal of the conditions in the area as a whole to protect the public, probable cause to conduct a home visit depends upon whether probable cause exists to justify the entry into a particular home based upon credible evidence that child neglect may be occurring in that particular home. Moreover, and importantly, the scope of the search in the present case was in no respect limited to ensuring compliance with certain identified housing code violations. The search here allowed DHS investigators to search the home, including every room, closet and drawer in the home, based entirely upon their own discretion. In short, while the search here was not conducted by law enforcement, its scope bore little or no relation to a traditional administrative search. ***As such, the contention that Camara's holding that administrative searches on an area basis are permitted where "reasonable legislative and administrative standards are satisfied" is insufficient to allow the exhaustive search of the entirety of family's home without a clear showing, based upon competent and, as necessary, corroborated, evidence establishing individualized suspicion exists allowing entry into a private home***.

---

[4] In *Good*, members of the Harrisburg Police and two social workers entered and searched a home without a warrant. The social workers argued that they were entitled to sovereign immunity because the law had not been developed to make clear that because this was a child abuse case, their actions would not be governed "by the well-established legal principles developed in the context of residential intrusions motivated by less pressing concerns." *Id*. at 1094. The Third Circuit disagreed, ruling that ***the controlling standards for determining whether probable cause exists in cases involving possible harm to children are the same as those developed in criminal cases and that no perceived increase in the societal interest involved alters these standards***.

"It evidences no lack of concern for the victims of child abuse or lack of respect for the problems associated with its prevention to observe that child abuse is not *sui generis* in this context. The Fourth Amendment caselaw has been developed in a myriad of situations involving very serious threats to individuals and society, and we find no suggestion there that the governing principles should vary depending on the court's assessment of the gravity of the societal risk involved. We find no indication that the principles developed in the emergency situation cases we have heretofore discussed will be ill suited for addressing cases like the one before us."

*Good*, 891 F.2d 1087, 1094. (footnotes omitted)

*Id*. at 622. (emphasis supplied).

Defendants had and continue to have no authority to obtain a search warrant in the first instance, as there is a clear process and procedure to follow that involves giving Plaintiff notice and an opportunity to be heard. The actions of Defendants obtaining the search warrant, particularly without sufficient probable cause, and executing as they did without notice is in violation of 42 U.S.C. §1983, the Fourth and Fourteenth Amendment of the U.S. Constitution, as well as the Constitution of the Commonwealth of Pennsylvania. There is a substantial likelihood that Plaintiff will prevail on the merits of its claims.  As such, Plaintiff has met its burden of showing a reasonable probability of success on the merits.

**B.    The Defendants' Warrantless Entry and Their Improper Warrant and Search Caused and Continues to Cause Irreparable Injury**

Plaintiff was and is being irreparably harmed by Defendants' use of the warrantless "inspection" and their service of the illegally obtained Search Warrant and the threatened statements by Defendants to continue to either unlawfully obtain and execute search warrants or simply continue with warrantless inspections in the future. Irreparable harm is an injury of such an irreversible character that prospective judgment would be "inadequate" to make the moving party whole. *See Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir. 1997); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989); *M. Rae, Inc. v. Wolf*, 509 F. Supp. 3d 235, 250 (M.D. Pa. 2020).

In the context of this suit, the fact that both the warrantless inspections have occurred and the Search Warrant was already executed in front of students, teachers and parents of the School is *per se* irreparable harm.  In addition, if the attack on the School by Defendants is permitted to continue, families may withdraw their students or choose not to enroll for the 2024-2025 school year; teachers may choose not to endure the continuing illegal harassment of Defendants and leave

14

the employ of Plaintiff; and the students should not be subjected to any further trauma than has already been suffered due to the unconstitutional activities of Defendants. All of this renders any future judgment in Plaintiff's favor inadequate to make Plaintiff whole.

The first two factors (likelihood of success on the merits and irreparable harm) are the two most critical factors in obtaining a TRO. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Given Plaintiffs strong showing of success on the merits of their claims under the Fourth and Fourteenth Amendments of the U.S. Constitution as well as the protections afforded under 42 U.S.C. §1983, the Constitution of the Commonwealth of Pennsylvania, and Pennsylvania law, and their showing of active irreparable harm, both of the two most critical factors weigh in Plaintiff's favor.

**C.    The Balancing of the Hardships Favors the School**

A basic principle behind the balancing analysis is to ensure that the issuance of a TRO would not harm Defendants more than a denial would harm Plaintiff. Defendants have already improperly and illegally entered the School property without a warrant in order to issue the "cease and desist" order which is being litigated. As discussed more fully in ¶¶ 43-44 of the Complaint, it was Defendants, not Plaintiff, who requested a stay in the current appeal pending before the Bureau of Hearings and Appeals. Therefore, it is hard to understand what concerns could be raised by Defendants regarding the operations at the School, since the Defendants have no stated urgency to conduct an evidentiary hearing on Plaintiff's appeal of the cease and desist order. The issuance of a TRO in this matter maintains the current status quo, absent the warrantless searches and the illegal and unconstitutional use by Defendants of a search warrant to enter Plaintiff's school.

**D.    The Public Interest Favors Checking Defendants' Harmful and Unlawful Conduct**

The final consideration in this court's analysis is whether the issuance of a TRO furthers the public interest. As Defendants claimed in their Probable Cause Affidavit, their contention is that the interest of protecting the safety and welfare of children justifies their exception to following the legal requirements of the Human Services Code and the United States and Pennsylvania constitutions. However, courts have steadfastly determined that unless there are "exigent circumstances," that is action must be taken to preserve life or avoid serious bodily injury, "the constitutionally guaranteed right to privacy must prevail." *Good*, 891 F.2d at 1094 (citations omitted). "The Fourth Amendment caselaw has been developed in a myriad of situations involving very serious threats to individuals and society, and we find no suggestion there that the governing principles should vary depending on the court's assessment of the gravity of the societal risk involved." *Id*. It is in the public interest to ensure that Defendants actions are not permitted to continue, particularly since it is believed that Defendants have utilized this method of entering and inspection property previously, and it has gone unchallenged[5].

## IV. CONCLUSION

Based on the aforementioned analysis and Plaintiff's Verified Complaint, Plaintiff respectfully requests this Court enter a temporary restraining order substantially in the form on the attached Proposed Order to Show Cause for Preliminary Injunction and Temporary Restraining Order and schedule a hearing for a preliminary injunction consistent with the terms of the concurrently filed Proposed Order to Show Cause for Preliminary Injunction and Temporary Restraining Order.

---

[5] *See, 1st Steps Int'l Adoptions, Inc. v. Dep't of Pub. Welfare*, 880 A.2d 24 (Pa. Commw. 2005). In *1st Steps*, the owner of an adoption agency, appealed after the Department refused to renew a third provisional license. The adoption agency owner did not appeal the Department's use of an administrative search warrant to access the premises, and the legality of the use by the Department of the search warrant is not discussed.

Respectfully submitted,

STRASSBURGER McKENNA
GUTNICK & GEFSKY


By: __/s/ Kathryn L. Clark_____
    Kathryn L. Clark
    Pa. I.D. No.: 80201
    kclark@smgglaw.com
    Alan T. Shuckrow
    Pa. I.D. No.: 74586
    ashuckrow@smgglaw.com
    Gretchen E. Moore
    Pa. I.D. No. 202103
    gmoore@smgglaw.com


*Counsel for Plaintiff*

**JURY TRIAL DEMANDED**