## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOUTH HILLS CATHOLIC ACADEMY, | } | |
| | } | No. 2:24-cv-00676-CB |
| Plaintiff, | } | |
| | } | Judge Bissoon |
| vs. | } | |
| | } | |
| PENNSYLVANIA DEPARTMENT OF | } | |
| HUMAN SERVICES, *ET AL.*, | } | |
| | } | ***Electronically Filed.*** |
| Defendants. | } | |

### DEFENDANTS' RESPONSE TO
### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [ECF 2]

AND NOW, come the Defendants, Pennsylvania Department of Human Services, *et al.* ("the Defendants"), by and through their counsel, Scott A. Bradley, Senior Deputy Attorney General, and Nicole R. DiTomo, Chief Deputy Attorney General, Civil Litigation Section, and file the within response to Plaintiff's Motion for Preliminary Injunction [ECF 2]:

### I.  STATEMENT OF THE CASE

South Hills Catholic Academy ("Plaintiff") initiated the instant action by filing a Complaint [ECF 1] in this Court on May 6, 2024.  The Complaint asserts claims premised on federal and state constitutional violations arising from the execution of an administrative search warrant on Plaintiff's premises on April 9, 2024.  The named Defendants include the Pennsylvania Department of Human Services ("DHS" or "the Department"); its current Secretary, Valerie A. Arkoosh; its Office of Child Development and Early Learning and Bureau of Certification Services, as well as several DHS employees, including the Department's counsel.

Concomitant with the filing of the Complaint, Plaintiff also filed a motion captioned as Motion for Entry of a Temporary Restraining Order and Preliminary Injunction [ECF 2] and a Memorandum of Law [ECF 3] in support.  By Text Order [ECF 7] entered on May 8, 2024, this

1

Court denied the motion "to the extent that it requests the entry of a TRO." Id. The Court nevertheless indicated that it "will consider Doc. 2 to the extent it requests a preliminary injunction, and will analyze the Motion under the appropriate standards, once the notice requirement in Rule 65(a)(1) is met." Id. On May 13, 2024, Plaintiff filed a Notice to Adverse Party [ECF 8], representing therein that Notice had been provided to the Defendants.

The Defendants have waived service of the Complaint, see [ECF 10], and now respond to Plaintiff's Motion for Preliminary Injunction [ECF 2] as follows:[1]

## II. STANDARD OF REVIEW

The grant of preliminary injunctive relief[2] is an "extraordinary remedy which should be granted only in limited circumstances." American Telephone & Telegraph Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421 (3d Cir. 1994)(internal quotations omitted). Specifically, the moving party must establish "(1) a likelihood of success on the merits; (2) that [he] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." See Kos Pharms, Inc. v. Andrx Corp., 369, F.3d 700, 708 (3d Cir. 2004)(citing Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999)); Brown v. Diguglielmo, 2007 WL 4570717, *1

---

[1] In further support of the instant response, the Defendants have attached hereto the Declaration of Amy Carnicella as Exhibit A. Ms. Carnicella is an Assistant Counsel with the Governor's Office of General Counsel and assigned to DHS. She is the attorney of record on behalf of the Department in the state administrative and judicial proceedings brought by Plaintiff in this case. See Declaration of Amy Carnicella, at ¶¶ 1-2.

[2] Pursuant to Rule 65 of the Federal Rules of Civil Procedure, a court may under certain limited conditions "issue a temporary restraining order without written or oral notice to the adverse party or its attorney." Fed. R.Civ. P. 65(b). A preliminary injunction, on the other hand, "may issue only on notice to the adverse party." Fed. R.Civ. P. 65(b). Instantly, the Defendants have been provided notice prior to the issuance of any order regarding preliminary injunctive relief; therefore, as reflected in this Court's Text Order [ECF 7], Plaintiffs' request is properly designated as a motion for preliminary injunction.

(E.D.Pa. 2007). See also Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989) and In Re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1143 (3d Cir. 1982).

The applicable rule requires the movant to provide "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard." See Fed. R.Civ. P. 65(b)(1)(A). Indeed, "[t]he facts must clearly support a finding that *immediate* and *irreparable* injury will result to the movant if preliminary relief is denied." Miskovitch v. Hostoffer, 2007 WL 433142, *2 (W.D.Pa. 2007)(*citing* United States v. Stazola, 893 F.2d 34, 37 n. 3 (3d Cir. 1990)).

Importantly, Plaintiff bears the burden of proving that he faces immediate, irreparable injury if the injunction sought is denied. See Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.), *cert. denied*, 493 U.S. 848 (1989). As summarized by one court,

> '[A]n essential prerequisite to the grant of a preliminary injunction is a showing by the movant of irreparable injury *pendente lite* if the relief is not granted.' United States v. Pennsylvania, 533 F.2d 107, 110 (3d Cir. 1976). A preliminary injunction 'may not be used simply to eliminate the possibility of a remote future injury.' Holiday Inns of Am., Inc. v. B&B Corp., 409 F.2d 614, 618 (3d Cir. 1969). '[T]he irreparable harm must be actual and imminent, not merely speculative.' Angstadt ex rel. Angstadt v. Midd-West Sch., 182 F.Supp.2d 435, 437 (M.D.Pa. 2002). '[M]ore than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a "clear showing of immediate irreparable injury," or a "presently existing actual threat...."' Continental Grp., Inc. v. Amoco Chems. Corp., 614 F.2d 351, 359 (3d Cir. 1980)(citations omitted). 'A preliminary injunction cannot be issued based on past harm. The purpose of a preliminary injunction is to prevent *future* irreparable harm.' Fisher v. Goord, 981 F.Supp. 140, 168 (W.D.N.Y. 1997)(emphasis in original).
>
> Moreover, '[t]he "requisite feared injury or harm must be irreparable—not merely serious or substantial," and it "must be of a peculiar nature, so that compensation in money cannot atone for it."' ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (*quoting* Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)). 'In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable

remedy following a trial.  The preliminary injunction must be the *only* way of protecting the plaintiff from harm.'  Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989)(emphasis added).  'The key word in this consideration is *irreparable*....  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'  Sampson v. Murray, 415 U.S. 61, 90 (1974)(emphasis in original).

Reid v. Ebbert, 2016 WL 7279109, *2-*3, *report and recommendation adopted*, 2016 WL 7231784 (M.D.Pa. 2016)(footnote omitted).

## III.  DISCUSSION

*(1)  Likelihood of Success on the Merits.*  Initially, Plaintiff is unable to establish a likelihood of success on the merits for several reasons:

> **A.    The Court should decline to exercise subject matter jurisdiction over this case under the *Burford* Abstention Doctrine.**

This Court should abstain from assuming jurisdiction over this case because of the ongoing proceedings in state court.  It is well-established that "a district court may decline to exercise or postpone jurisdiction, even diversity jurisdiction, 'where a difficult question of state law is presented which involves important state policies or administrative concerns.'"  Rucci v. Cranberry Township, Pa., 130 F.App'x 572, 577 (3d Cir. 2005).  This type of abstention is known as a *Burford* abstention, established by the Supreme Court's decision in Burford v. Sun Oil Co., 319 U.S. 315 (1943).

In essence, the "purpose of the *Burford* abstention is to avoid federal intrusion into matters of local concern and which are within the special competence of local courts."  Baykeeper v. NL Indus., Inc., 660 F.3d 686, 693 (3d Cir. 2011).  Under *Burford*, the Supreme Court has explained:

> When timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings

4

or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems or substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 361 (1989) (*quoting*

Colorado River Water Conservation District v. United States, 424 U.S. 800, 814 (1976)).

Accordingly, the Third Circuit has identified a two-step analysis to determine when abstention under Burford is appropriate. See Baykeeper v. NL Indus., Inc., 660 F.3d at 693 (*citing*

Riley v. Simmons, 45 F.3d 764, 771 (3d Cir. 1995)):

The first step is to determine 'whether timely and adequate state-court review is available.' Id. (internal quotation marks omitted). Only if the answer to the question is in the affirmative may a court then consider whether 'the case before it involves difficult questions of state law impacting on the state's public policy or whether the district court's exercise of jurisdiction would have a disruptive effect on the state's efforts to establish a coherent public policy on a matter of important state concern.' Id.

Baykeeper v. NL Indus., Inc., 660 F.3d at 693 (*citing* Riley v. Simmons, *supra*).

Plaintiff's instant claims are essentially challenges to DHS's position that Plaintiff is operating a daycare which requires that Plaintiff meet certain licensure requirements under state law; that issue is subject to proceedings that are currently ongoing in state court.[3]  See Amended Complaint [ECF 1], at ¶¶ 25-30.   The Commonwealth Court of Pennsylvania has resolved the interlocutory jurisdictional challenge asserted by Plaintiff, such that the matter has been remanded to the DHS's Bureau of Hearings and Appeals ("BHA") for resolution of the "cease and desist"

_____

[3]  For purposes of these proceedings, the Department considers the word "facility" to mean the Plaintiff's Guardian Angels Program, which operates before and after school is in session.  See Complaint [ECF 1], at ¶ 20.

letter on the merits, from which Plaintiff would have available avenues of both administrative review and judicial appeal.

Pennsylvania has promulgated a system for licensing of care facilities, including facilities providing child care services.[4]  Clearly, the Commonwealth has an obvious and evident interest in regulating facilities which provide day care services to school age children.  Cf. In re D.C.D., 91 A.3d 173, 180 (Pa. Super. 2014), *rev'd on other grounds*, 105 A.3d 662 (Pa. 2014)("There is no question the state has a compelling interest in protecting the health, safety and welfare of children").

This Court has recognized in similar contexts that "Pennsylvania's licensing requirements implicate important state interests regarding the safety and welfare of [the participants]." Donahue's Personal Care I v. Pennsylvania, 2012 WL 4926366, *2 (W.D.Pa. 2012)(related to nursing home residents)(*citing* Valenti v. Cohen, 1990 WL 55034, *10-*11 (E.D.Pa. 1990)(recognizing same), *aff'd*, 904 F.2d 697 (3d Cir. 1990)).  Cf. D.G.A. v. Department of Human Services, 2020 WL 283885, *6 (Pa. Cmwlth. 2020) ("Logically, a facility that is not operating pursuant to its license may be presumed to be in violation of regulations providing for the health, well-being, and safety of the intended residents").

Consequently, because this matter involves a highly structured state regulatory scheme and because Plaintiff has access to timely and adequate state-court review, which is currently ongoing,

---

[4]  The relevant statutory scheme defines "Child care" as "care in lieu of parental care given for part of the twenty-four hour day to a child under sixteen years of age, away from the child's home but does not include child care furnished in a place of worship during religious services."  See 62 P.S. §§ 901, 1001 ("Child care").

A "Child care center" is defined as "any premises operated for profit in which child care is provided simultaneously for seven or more children who are not relatives of the operator, except such centers operated under social service auspices."  See 62 P.S. § 1001 ("Child care center").

this Court should also exercise its discretion and abstain under *Burford* in the case *sub judice* and dismiss Plaintiff's present motion for lack of subject-matter jurisdiction.

> **B.    In the alternative, DHS's decision to obtain an administrative search warrant did not violate Plaintiff's federal or state constitutional rights.**

In the event that this Court should decline to abstain from assuming jurisdiction over this matter, Plaintiff cannot establish a likelihood of success on the merits.  Plainly, the Fourth Amendment provides protections from unreasonable searches.  However, as the Third Circuit has observed, "[t]here is a difference between searches for which no warrant is required, administrative searches that require an administrative search warrant, and ordinary searches that require a warrant based upon 'probable cause in the criminal law sense.'" Free Speech Coalitions, Inc. v. Attorney General of the United States, 825 F.3d 149, 172 (3d Cir. 2016)(*citing and quoting* Marshall v. Barlow's, Inc., 436 U.S. 307, 320 (1978)).

Instantly, it is the Department's position that the inspection at issue was statutorily authorized and did not require an administrative warrant.  Title 62 houses the Human Services Code (62 P.S. §§ 101 *et seq.*)(hereinafter "the Code").  The Code generally sets forth the powers and duties of the Department of Human Services ("DHS").  Article IX (Departmental Powers and Duties as to Supervision)(62 P.S. §§ 901-922) and Article X (Departmental Powers and Duties as to Licensing)(62 P.S. §§ 1001-1088) contain the provisions applicable to the present circumstances.

Initially, DHS is empowered by statute to provide certain regulation and oversight of various care facilities, including "[a]ll children's institutions within this Commonwealth."  See 62 P.S. § 902.  See also Our Lady of Victory Catholic Church v. Department of Human Services, 153

A.3d 1124, 1128-1129 (Pa. Cmwlth. 2016); <u>St. Elizabeth's Child Care Center v. Department of Public Welfare</u>, 963 A.2d 1274 (Pa. 2009).

In *St. Elizabeth's*, the Pennsylvania supreme court held

> that Article IX of the Public Welfare Code (Code), 62 P.S. §§ 901-922, grants the Department of Public Welfare (DPW) broad supervisory authority over children's institutions, and that such authority reasonably can be interpreted to include the power to promulgate regulations requiring certification of nonprofit childcare centers.

<u>St. Elizabeth's Child Care Center v. Department of Public Welfare</u>, 963 A.2d at 1279 (Baer, J., *concurring*).

Thus, the Department has the statutory authority, and the duty, to make and enforce rules and regulations for a visitation, examination, and inspection of all supervised institutions, and said visitation, examination or inspection may occur *both before and after* the beginning of operation of the supervised facility. <u>See</u> 62 P.S. § 911(a)(1) (emphasis added). This statutory authority not only requires child day care centers operated by churches and other nonprofits to obtain a Certificate of Compliance, but it also grants authority to the Department to issue Cease & Desist Orders when an entity providing child care services has not obtained the required Certificate of Compliance. <u>See</u> <u>Our Lady of Victory Catholic Church v. Department of Human Services</u>, 153 A.3d 1124, 1128 (Pa. Cmwlth. 2016). The Court in *Our Lady of Victory* also determined that, "[w]hile an agency's powers must be conferred by the legislature, they may be conferred not only by express statutory authorization, but also by necessary implication." <u>Id.</u>, at 1129.

Article IX of the Human Services Code in relevant part states that

> [f]or these purposes and for the purpose of determining whether or not a facility should be subject to the supervision of the department in accordance with section 902, the secretary, or other officer, inspector or agent of the department, shall have free and full access to the grounds, premises, and buildings of and to all the records,

8

> books or papers of or relating to any such State or supervised institution, and full opportunity to interrogate or interview any inmate thereof, or any person or persons committed to or being detained, treated or residing therein, and all persons connected with any such State or supervised institution as officers, or charged with the management, thereof, by law or otherwise, or in any way having the care, custody, control, or management thereof, or connected therewith as employes, are hereby directed and required to give to the secretary, or to such officer, inspector or agent of the department, such means, facilities and opportunity for such visitation, examination, inquiry and interrogation, as is hereby provided and required, or as the department, by its duly ordained rules or regulations, may require.

62 P.S. § 911(b).

The Department's regulations also state that a facility or agency shall provide to authorized agents of the Department full access to the facility or agency and its records during both announced and unannounced inspections.  See 55 Pa. Code § 20.34.  The facility or agency shall provide the opportunity for authorized agents of the Department to privately interview staff and clients.  Id.  A staff person shall provide to agents of the Department immediate access to the facility and, upon request, to the children and the files and records.  See 55 Pa. Code § 3270.24.

In consideration of the Department's regulations, 55 Pa. Code Chapter 3270, child care centers, applies to facilities in which out-of-home care is provided, at any one time, for part of a 24-hour day to seven or more children, 15 years of age or younger, including: (2) care provided in private or public, profit or nonprofit facilities and/or (3) care provided before or after the hours of instruction in nonpublic schools and in private nursery schools and kindergartens.  See 55 Pa. Code § 3270.3(a)(2-3).  "Facility" is defined as a child care center.  55 Pa. Code § 3270.4.  A "child care center" is defined as the premises in which care is provided at any one time for seven or more children unrelated to the operator.  Id.  Thus, DHS has the authority conferred by Article IX to

9

conduct inspections not only of child care centers but also of any facility *suspected* of operating a child care center without the required license.

Accordingly, the Defendants submit that no warrant was required to conduct the inspection of Plaintiff's facility on April 9, 2024, as such inspection was authorized by Section 911(b). Nevertheless, an administrative search warrant had been obtained because the DHS inspectors were refused entry on March 20, 2024, after having previously been granted entry on February 27, 2024, the first inspection after the Commonwealth Court ruled on Plaintiff's jurisdictional appeal. Thus, Plaintiff cannot demonstrate success on the merits based on DHS's resort to an administrative search warrant to conduct an otherwise statutorily authorized inspection on April 9, 2024.

      *(2) Plaintiff will suffer irreparable harm.*  Plaintiff has not demonstrated that it will suffer irreparable harm.  This Court has advised that

> "'[T]o demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'"  <u>Siemens USA Holdings Ing v. Geisenberger</u>, 17 F.4th 393, 407-08 (3d Cir. 2021)(*quoting* <u>Campbell Soup v. ConAgra, Inc.</u>, 977 F.2d 86, 91 (3d Cir. 1992)).  Plaintiff must 'produce affirmative evidence indicating that he or she will be irreparably harmed should that relief be denied,' <u>Marxe v. Jackson</u>, 833 F.2d 1121, 1127 (3d Cir. 1987)(citations omitted), and the threatened harm 'must not be speculative,' <u>Adams v. Freedom Forge Corp.</u>, 204 F.3d 475, 487-88 & n.13 (3d Cir. 2000).  'Thus, even though the preliminary injunction inquiry is forward looking, the court can and must determine whether the moving party has established "that it specifically and personally risks irreparable harm" to succeed on this factor.'  <u>ADP, Inc. v. Levin</u>, No. 21-2187, 2022 WL 1184202, at *2 (3d Cir. Apr. 21, 2022) (*citing* <u>Adams</u>, 204 F.3d at 487).

<u>Alexander v. Thornley</u>, 2023 WL 4357601, *5, *report and recommendation adopted*, 2023 WL 4353678 (W.D.Pa. 2023).  *See also* <u>Morris v. Pennsylvania Department of Corrections</u>, 2022 WL

18635245, *3 (W.D.Pa. 2022), *report and recommendation adopted*, 2023 WL 33085 (W.D.Pa. 2023).

Additionally, "[t]o satisfy the exacting standard of a preliminary injunction, the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" Morris v. Pennsylvania Department of Corrections, 2022 WL 18635245, at *3 (*citing* Martinez v. Rivello, 2022 WL 3088092, *4 (M.D.Pa. 2022)(*quoting* Golden v. Zwickler, 394 U.S. 103, 109-110 (1969); Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941) *and* United Pub. Workers v. Mitchell, 330 U.S. 75, 89-91 (1947)). Accordingly,

> [t]he moving party must establish that the harm is imminent and probable. Anderson v. Davila, 125 F.3d 148, 164 (3d Cir. 1997). In order to be imminent, the injury cannot be remote or speculative; it must be poised to occur before the court can decide the matter on the merits. See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 263-64 (3d Cir. 2000).

Housing & Redevelopment Insurance Exchange v. Fudge, 2024 WL 1388983, *6 (M.D.Pa. 2024).

Without citation to any authority to support this claim, Plaintiff posits that

> the fact that both the warrantless inspections have occurred and the Search Warrant was already executed in front of students, teachers and parents of the School is *per se* irreparable harm. In addition, if the attack on the School by Defendants is permitted to continue, families may withdraw their students or choose not to enroll for the 2024-2025 school year; teachers may choose not to endure the continuing illegal harassment of Defendants and leave the employ of Plaintiff; and the students should not be subjected to any further trauma than has already been suffered due to the unconstitutional activities of Defendants. All of this renders any future judgment in Plaintiff's favor inadequate to make Plaintiff whole.

Memorandum of Law [ECF 3], at 14-15.

Under the prevailing standard, this is not sufficient to sustain Plaintiff's burden of demonstrating irreparable harm. Moreover, Plaintiff has not provided any factual support for its claim that the DHS inspections –including the one accompanied by the administrative search

11

warrant on April 9, 2024– caused trauma to any student, teacher or parent.  Notwithstanding that none of these classes of persons are parties to the instant litigation, there is no evidence of record that any of these individuals suffered "trauma" as a result of the DHS inspections which had been ongoing since February 23, 2022.  Further, Plaintiff cannot demonstrate any "real and immediate" need for judicial intervention.  Indeed, as set forth above, Plaintiff frames its claim of harm through language that confirms the speculative nature of the harm claimed, *e.g.*, "families may withdraw their students" and "teachers may choose [to] leave the employ..."  Memorandum of Law [ECF 3], at 14-15.  But see Adams v. Freedom Forge Corp., 204 F.3d at 487-488 & n. 13 (confirming that the threatened harm must not be speculative).  The affidavit submitted along with this response reflects that the last inspection of Plaintiff's facility occurred on April 9, 2024, and that DHS did not undertake any inspection in May of 2024 due to Plaintiff's filing of this federal action.  Declaration of Amy Carnicella (attached hereto as Exhibit A), at ¶ 17.  The affidavit further asserts that no inspections would take place during the upcoming summer months while school was in recess.  Id., at ¶ 18.

As for Plaintiff's claim that these inspections may result in the loss of student enrollment and/or defections from the teaching staff is not only speculative but appears to be a claim of purely economic harm.  Yet, our courts have consistently held that economic harm can always be remedied by an award of damages.  See, e.g., Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017)("the availability of money damages for an injury typically will preclude a finding of irreparable harm"); Frank's GMC Truck Center, Inc. v. General Motors Corp., 847 F.2d 100, 102 n. 3 (3d Cir. 1988)(same).  See also Housing & Redevelopment Insurance Exchange v. Fudge, 2024 WL 1388983, at *5.  Further, this claim of irreparable harm is purely speculative where

Plaintiff has not provided any evidence of loss of student enrollment or faculty staff even though these inspections have been ongoing since February 23, 2022.

Consequently, based on the foregoing, the Court should dismiss Plaintiff's Motion for Preliminary Injunction where Plaintiff has not made a clear showing that it will suffer immediate and irreparable harm if judicial intervention is not forthcoming.

***(3) Greater Harm to the Nonmoving Party.*** While it is not necessary to address these last two factors, it would seem that they, too, favor the Defendants' position in this matter. Generally, granting Plaintiff's requested relief could have a deleterious impact on DHS's ability to fulfill their mandate of monitoring care facilities under their jurisdiction. See St. Elizabeth's Child Care Center v. Department of Public Welfare, 963 A.2d at 1279 (Baer, J., *concurring*). See also Our Lady of Victory Catholic Church v. Department of Human Services, 153 A.3d at 1128-1133 (acknowledging DHS authority to issue cease and desist orders to enforce its regulations governing nonprofit child day care centers). Indeed, it goes without saying that the public has an interest in monitoring and securing the health, safety and welfare of the participants –including elementary and middle school age children– in programs under DHS oversight.

More specifically, as referenced above, Article IX of the Human Services Code and 55 Pa. Code Chapter 3720 impose on the Defendants oversight responsibility concerning the operation of childcare centers within the Commonwealth to protect the health, safety and well-being of children receiving care in facilities that meet licensure criteria. This statutory and regulatory scheme establishes *minimum* standards necessary to ensure the health, safety and well-being of children in group childcare settings. See 62 P.S. § 911(b); 55 Pa. Code § 3720.2 While acknowledging that harm to the non-moving party that may result from imposition of an injunction is an element the Court must weigh, Plaintiff limits its discussion of the "harm" element to its own considerations

13

without any discussion of the harm that an injunction would cause to the Defendants' interests. The failure of Plaintiff to address this required prong necessitates denial of its request for an injunction.

Enjoining the Defendants statutorily imposed childcare oversight function will most certainly cause harm to not only the Department but also to the vulnerable children placed by their parents in the care of others. When an unlicensed facility is determined to require licensure, the Department seeks to remedy that noncompliance through issuance of a cease and desist notice directing the unlicensed facility to either apply for a license or cease providing such care to vulnerable persons. Where, as here, the facility subject to a cease and desist notice exercises its right of appeal, for purposes of due process, the facility is permitted to continue operating during the pendency of the appeal subject to periodic inspections that are of limited scope and duration and that largely focus on staff-to-child ratios and an examination of the child care environment to assess whether there are open and obvious threats to the health, safety and well-being of children in care.

When contrasting the relative harms to the respective parties' interests, the harm experienced by the Department through enjoining its childcare oversight responsibilities far outweighs any possible harm that Plaintiff may experience from these limited, periodic monitoring inspections. Indeed, as reflected in the attached Declaration of Amy Carnicella, the inspections that Plaintiff seeks to enjoin are limited in focus and duration, typically occurring monthly and lasting approximately 30 minutes while focusing on obvious threats present in the care environment that may pose a serious threat to the health, safety and well-being of the children in care, e.g., fire safety, hazardous conditions, accessible toxic substances, or significant understaffing. See Declaration of Amy Carnicella, at ¶¶ 4 n. 1, 6-7, 15-17. Balancing the

respective potential harms to the parties that would result from grant of injunctive relief weighs heavily in the Defendants' favor and denial of the relief sought would also inure to the substantial benefit of the families that entrust to the care of their children to others.

*(4) The Public Interest Favors Such Relief.*  This final prong also does not weigh in Plaintiff's favor.  The public has a significant interest in the maintenance of a sound childcare delivery system to ensure public confidence that childcare facilities in the Commonwealth provide safe and healthy placement options for families.  Notwithstanding that the burden here is on Plaintiff, the Defendants contend that permitting childcare facilities to operate without verification of compliance with minimum licensing standards will seriously undermine the public's interest in the Department carrying out its statutory mandate. See 62 P.S. §§ 901 *et seq.*  See also Birch Hills Residence v. Commonwealth, Department of Public Welfare, 943 A.2d 357, 362 (Pa. Cmwlth. 2008)("The operation of a [Department licensed facility] is an activity that by its nature involves concern for the safety and welfare of the residents").   There is no right –and no benefit to the public– to all allow delivery of childcare in a facility that does not meet minimum regulatory standards.  Cf. O'Bannon v. Town Court Nursing Center, 447 U.S. 773 (1980)(residents have no constitutionally protected interest to receive care in a facility that lacks certification by the designated oversight agencies).

In addressing the fourth prong of the established test for injunctive relief, Plaintiff focuses solely on *its* Constitutional right to be free from unreasonable search and seizure by government agents and does not address in any meaningful way the public's interests in protecting children from potential harm.  There is no debate that the Fourth Amendment of the U.S. Constitution bars unreasonable search and seizure of property by agents of the government.  There can also be no debate concerning the public's interest in the Department carrying out the obligations imposed by

Article IX of the Human Services Code. 62 P.S. §§ 901 *et seq.*  On the facts here, this fourth prong of the injunction test therefore requires a balancing of these competing interests.

Notably, there are circumstances where government agents may enter and search private property for legitimate purposes without violating or otherwise invoking the Fourth Amendment. Here, 62 P.S. § 911(b) grants the Department a statutory right of access to any premises where it has a basis to suspect, or has specific knowledge, that a person or entity is operating a childcare facility without the required license under Article IX.  In contravention of 62 P.S. § 911(b), and after the Department's agents presented specific authority to enter and inspect on multiple occasions, Plaintiff refused the Department access to its premises to conduct a monitoring inspection to assess whether conditions existed at the Guardian Angels Program premises that posed a threat to the health, safety or well-being of the children in care.  It was Plaintiff's refusal to comply with 62 P.S. § 911(b) that necessitated the Department to seek judicial review of its application for an Administrative Search Warrant in accordance with the long-settled tenets of Fourth Amendment jurisprudence.

The indisputable facts here show that the Department sought judicial authorization to conduct its "search" of Plaintiff's premises to assess whether threats to the health and safety of the children were present, and the invocation of this lawful judicial process refutes Plaintiff's assertion that Defendants' actions violated the Fourth Amendment.  Moreover, as discussed above, Plaintiff fails to even recognize the public's strong interest in the Department carrying out its statutorily imposed responsibilities to conduct oversight of facilities where childcare is provided.  When the public's interest in ensuring that the childcare system within the Commonwealth complies with minimum health and safety requirements is juxtaposed against the absence of any evidence showing that the Department's actions constitute an unreasonable search and seizure, it is clear

that Plaintiff has failed to carry its burden under the fourth prong of the test governing the instant motion for a preliminary injunction.  For the reasons set forth above, the Defendants move for dismissal of Plaintiff's motion seeking to enjoin the Department's obligation to conduct ongoing monitoring inspections of Plaintiff's GAP program pending BHA's issuance of a final order resolving Plaintiff's administrative cease and desist appeal.

## IV.  CONCLUSION

WHEREFORE, the Defendants respectfully request that this Court deny Plaintiff's Motion for Preliminary Injunction [ECF 2] and/or abstain under the *Burford* and/or *Younger* abstention doctrines and dismiss Plaintiff's present action for lack of subject-matter jurisdiction.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

By:    */s/ Scott A. Bradley*
Scott A. Bradley
Senior Deputy Attorney General
Pa. I.D. # 44627

OFFICE OF ATTORNEY GENERAL          Nicole R. DiTomo
1251 Waterfront Place               Chief Deputy Attorney General
Mezzanine Level                     Civil Litigation Section
Pittsburgh, PA 15222
(412) 565-7680

Date:   June 14, 2024